UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOUISIANA MUNICIPAL POLICE EMPLOYEES' RETIREMENT SYSTEM, on behalf of itself and all other similarly situated shareholders of Medco Health Solutions, Inc., <br><br> Plaintiff, <br><br> v. <br><br> MEDCO HEALTH SOLUTIONS, INC., *et al.* <br><br> Defendants. | Civil Action No. 11-4211(DMC) |

-----

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
MOTION FOR EXPEDITED PROCEEDINGS**

-----

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, New Jersey  07068
(973) 994-1700

Jay W. Eisenhofer
Michael Barry
GRANT & EISENHOFER P.A.
1201 N. Market Street
Wilmington, Delaware 19801
(302) 622-7000

Attorneys for Plaintiff

Mark Lebovitch
Brett M. Middleton
Jeremy Friedman
BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

PROCEDURAL BACKGROUND OF THE LITIGATION .............................................. 3

ARGUMENT .............................................................................................................................. 4

I. This Court Has Subject Matter Jurisdiction And Plaintiff Has Made
A Sufficient Showing On The Merits To Warrant Expedition ........................... 4

II. Plaintiff Has Shown Sufficient Risk Of Irreparable Harm To Warrant Expedition ........... 5

III. The Balance Of Equities Favors Expedition ....................................................... 8

CONCLUSION ...................................................................................................................... 10

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*ACE Ltd. v. Capital Re Corp*,
   747 A.2d 95 (Del. Ch. 1999)..................................................................................................9

*Botton v. Ness Techs., Inc.*,
   C.A. No. 11-3950 (SRC) (MAS) (D.N.J. Aug. 4, 2011) .......................................................6

*Gianmargo v. Snapple Beverage Corp.*,
   C.A. No. 13845, 1994 WL 672698 (Del. Ch. Nov. 15, 1994)...............................................6

*In re Del Monte Foods Co. S'holders Litig.*,
   C.A. No. 6027-VCC, 2011 WL 532014 (Del. Ch. Feb. 14, 2011) ........................................7

*In re Int'l Jensen Inc. S'holders Litig.*,
   No. Civ. A. 14992, 1996 WL 422345 (Del. Ch. July 13, 1996)............................................6

*In re W. Nat'l Corp. S'holders Litig.*,
   No. 15927, 1998 WL 51733 (Del. Ch. Feb. 4, 1998) ............................................................6

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*,
   441 F. Supp. 2d 552 (S.D.N.Y. 2006)...................................................................................6

*Leone v. King Pharms., Inc.*,
   No. 2:10-cv-230, 2010 WL 4736271 (E.D. Tenn. Nov. 16, 2010)........................................6

*Lichtenberg v. Besicorp Group Inc.*,
   43 F. Supp. 2d 376 (S.D.N.Y. 1999).....................................................................................5

*N.K.S. Distribs., Inc. v. Tigani*,
   C.A. No. 4640-VCP, 2010 WL 2367669 (Del. Ch. June 7, 2010) .......................................6

*Police & Fire Ret. Sys. of City of Detroit v. Bernal*,
   C.A. No. 4663-CC, 2009 WL 18731443 (Del. Ch. June 26, 2009) .....................................7

*Roland Mach. Co. v. Dresser Indus., Inc.*,
   749 F.2d 380 (7th Cir. 1984) .................................................................................................6

*Sinclair Nat'l Bank v. Office of the Comptroller of the Currency*,
   No. 00-2398 HHK/DR, 2000 WL 34012862 (D.D.C. Dec. 18, 2000) .................................8

*Solash v. Telex Corp.*,
   1988 WL 3587 (Del. Ch. Jan. 19, 1998)...........................................................................9, 10

*Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*,
   03 CIV. 4148 (WHP), 2003 WL 22909149 (S.D.N.Y. Dec. 10, 2003).................................6

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,*
    60 F.3d 27 (2d Cir. 1995) ................................................................................................ 6

**STATUTES**

28 U.S.C. § 1332(a) ............................................................................................................ 1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(h)(1) ...................................................................................................... 3

## INTRODUCTION

Express Scripts, Inc.'s ("Express Scripts") brief in opposition to Plaintiff's application for expedited discovery: (i) distorts Delaware law, (ii) ignores the present harm created by the $950 million termination fee (the "Termination Fee") and other deal protections, and (iii) glosses over the severe impairment of Plaintiff's ability to prosecute its claims if forced to litigate this case in the short interval between Defendants' setting the shareholder vote and actually holding it. Express Scripts' opposition is just another attempt to delay Plaintiff's justifiably aggressive prosecution of this action.

*First*, this Court has jurisdiction over the action pursuant 28 U.S.C. § 1332(a). Under Section 1332(a), jurisdiction is appropriate as no Defendant is a resident of Louisiana and Plaintiff's nearly 5,000 share stake meets the amount in controversy requirement both because it gives Plaintiff standing to seek an injunction against the $29 billion merger and $950 million Termination Fee and because the potential damages far exceed the jurisdictional threshold.

*Second*, Plaintiff has a strong likelihood of success on the merits of its claims. Contrary to Express Scripts' invocation of the deferential business judgment rule, the applicable law is clear that in reviewing the deal protections at issue here this Court is required to apply an enhanced scrutiny, evaluating the *reasonableness* of the lock-ups in this case. The $950 million Termination Fee erects an unlawful restriction on the Medco Health Solutions, Inc. ("Medco" or the "Company") directors' fiduciary duties, and is unreasonable by any measure. By triggering Express Scripts' obligation to pay simply if, due to intervening events, the Medco directors determine that they can no longer support the merger (even in the absence of a competing bid), the Termination Fee unlawfully precludes Medco's directors from complying with their fiduciary obligations. Moreover, not only does this fee far exceed any out of pocket expense Express

1

Scripts will incur as a result of its bid, but four years ago, Express Scripts itself argued that a $675 million termination fee should be *per se* invalid. This fee has one purpose – to thwart any competing bids that could jeopardize Express Scripts' acquisition of Medco.

*Third,* Plaintiff faces the likelihood of irreparable harm if expedited proceedings are denied. Express Scripts contends that money damages could sufficiently compensate Plaintiff for any harmed caused by Defendants' alleged breaches of fiduciary duty. This ignores reality. Monetary damages generally are unavailable except for the most egregious breach of the duty of loyalty, rendering injunctive relief as the *only* viable means of vindicating a breach of the duty of care. Express Scripts also argues that there is no irreparable harm because any shareholder vote on the Proposed Transaction will likely not be set until well into 2012. Again, Express Scripts misses the mark. Medco shareholders are being harmed *toda*y because the Termination Fee and other deal protections unreasonably deter third parties from submitting a competing bid. The lengthy period between the announcement of the Proposed Transaction and the shareholder vote only exacerbates the harm. As the recent stock market turbulence highlights, the world can change significantly over the next nine months. The Medco Board of Directors ("Board") needs the flexibility to change its recommendation on the deal without triggering a crippling cash payment to Express Scripts.

*Fourth*, a balancing of the equities clearly favors granting expedited discovery. Defendants will only face a minimal burden if forced to provide Plaintiff with expedited discovery pursuant to the reasonable schedule Plaintiff submitted. In fact, Defendants likely have a significant portion of the documents Plaintiff requests readily available. In sharp contrast, Plaintiff's prosecution of its action would be severely hampered if the Court denies the request for expedited proceedings. Medco shareholders will be forced to assemble a record to support

injunctive relief in three to four week window between Defendants' setting the vote and actually holding it. This artificial delay and rush through discovery would harm Medco shareholders' ability to effectively litigate their claims and would invite Defendants to manipulate discovery to their advantage given the compressed time frame.

## PROCEDURAL BACKGROUND OF THE LITIGATION

This action, filed on July 22, 2011, is one of seven related actions pending before this Court alleging generally that the Medco Board had breached their fiduciary duties to Medco's shareholders by rushing to accept a takeover bid from Express Scripts and, as part of the merger agreement, agreed to an excessive Termination Fee to keep other potential bidders away.[1] As soon as this action was filed, a copy of the complaint was provided to Defendants' counsel, with a request that they accept service. Defendants' initial response was noncommittal, but eventually they refused to accept service.[2] Accordingly, Plaintiff effected formal service on August 3, 2011.[3]

On August 1, Plaintiff submitted a letter request to the Court seeking expedited discovery and a schedule for filing a preliminary injunction against enforcement of the Termination Fee. Again, Plaintiff reached out to Defendants' counsel to attempt to work out a schedule, but they

---

[1] The other related proceedings are as follows: *Nadoff v. Medco*, Civil Action No. 11-4248(DMC); *Puerto Rico Government Employees and Judiciary Retirement System Administration v. Medco*, Civil Action No. 11-4259(DMC); *Sollins v. Medco*, Civil Action No. 11-4307(DMC), *Oppenheim Kapitalanlagegesellschaft mbH v. Medco*, Civil Action No. 11-4322(DMC); *United Food And Commercial Workers Local 23 And Emp'r Pension Fund v. Medco*, Civil Action No. 11-4328(DMC) and *Int'l Union of Operating Eng'rs Local 132 Pension Fund v. Medco*, Civil Action No. 11-4412(DMC)

[2] Despite Defendants' complaints about being denied due process because of lack of service of process, they have not contested service and, thus, have waived any complaints related thereto. *See* Fed. R. Civ. P. 12(h)(1).

[3] Service was delayed because the Clerk's office did not publicly assign a docket number or issue a summons until July 28, 2011.

did not respond. On August 3, Plaintiff filed a letter to Judge Falk requesting a telephone conference relating to their application. The Court held a phone conference later that morning. At that time, Judge Falk directed that written discovery may be served, but that the parties should attempt to work out a mutually agreeable schedule. In accordance with Judge Falk's directions, Plaintiff attempted to negotiate a discovery schedule with Defendants, but was unable to do so. (*See* ECF No. 18.)

In the meantime, the Delaware plaintiffs served written discovery requests upon Defendants, apparently without objection from the Defendants, and Defendants answered the Delaware complaints on August 1. On August 2, one of the Delaware plaintiffs, U.F.C.W. Local 1776 & Participating Employers Pension Fund ("Local 1776"), moved for consolidation of all of the Delaware actions, for class certification, and for appointment of itself as lead plaintiff. On August 4, Express Scripts filed papers consenting to class certification and, based upon a deposition which apparently had been taken some time between Local 1776's filing on August 2 and Express Scripts' filing on August 4, it also consented to Local 1776 being an adequate class representative. (*See* ECF No. 18-1.) However, it appears that, unlike here[4], the Delaware plaintiffs are still squabbling over leadership because on August 8, Local 1776 sent a letter to the court requesting a briefing schedule and hearing relating to leadership.

## ARGUMENT

I. **This Court Has Subject Matter Jurisdiction And Plaintiff Has Made A Sufficient Showing On The Merits To Warrant Expedition**

Contemporaneously with the filing of this brief, Plaintiff has filed with the Court a brief in opposition to the Defendants' motion to dismiss and motion to stay this action. Many of the

---

[4] On August 8, Plaintiff submitted to the Court a proposed Order to consolidate all of the actions pending here, and setting up an agreed leadership structure. (ECF No. 17.)

arguments set forth in that brief directly respond to Express Scripts' opposition to Plaintiff's Application for Expedited Discovery, including arguments supporting Plaintiff's position that this Court has subject matter jurisdiction and that Plaintiff has made a sufficient showing on the merits. Rather than burden the Court with duplicative briefing, Plaintiff respectfully refers the Court to Plaintiff's Brief in Opposition to Defendants' Motions to Dismiss and Stay, sections I and IV, and incorporates these arguments as if fully set forth herein.

## II.   Plaintiff Has Shown Sufficient Risk Of Irreparable Harm To Warrant Expedition

Expedited proceedings in this matter are not only appropriate but necessary in order to permit this Court the opportunity to timely review and consider the validity of the $950 million Termination Fee, along with the other deal protections, in the proposed merger agreement with Express Scripts with enough time to enable other potential suitors for Medco to investigate and compose alternative financially superior proposals. Significantly, expedited discovery and adjudication of Plaintiff's claims will enable the Court to provide prompt relief so that competing bids can be made free of the punitive and anticompetitive impact of the Termination Fee.

Without the requested expedited proceedings, Express Scripts and Medco will continue to push the Proposed Transaction through the regulatory review process while the Termination Fee and other deal protections preserve an uneven playing field that discourages alternative bidders, such as Walgreens, from making superior offers. Absent expedited proceedings, Medco's public shareholders will forever lose the ability to receive full value for their Medco stock in a sale of the Company and will be coerced into voting on the deal under the threat of the Termination Fee which, if triggered, will destroy most of Medco's 2011 earnings. This constitutes sufficient risk of irreparable harm necessary to warrant expedited discovery. *See, e.g., Lichtenberg v. Besicorp Grp. Inc.,* 43 F. Supp. 2d 376, 391 (S.D.N.Y. 1999) (finding injury threatened by cash-out

merger to be irreparable in that it could not be prevented or fully rectified by final judgment after trial); *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 391 (7th Cir. 1984) (finding irreparable harm where nature of losses that plaintiffs feared were such as to make calculation of damages a difficult and not very satisfactory process); *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.,* 441 F. Supp. 2d 552, 563 (S.D.N.Y. 2006) (plaintiffs threatened with irreparable harm by defendants' attempts to exercise control over company); *Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*, 03 CIV. 4148 (WHP), 2003 WL 22909149, at *4 (S.D.N.Y. Dec. 10, 2003) ("The dilution of a party's stake in, or a party's loss of control of, a business constitutes irreparable harm.").

Defendants' contend that because Plaintiff's claims are based on the risk of an inadequate merger price, any resulting harm can be fully addressed later by an award of money damages. Defendants are wrong. Indeed, because there is no way to know whether a superior proposal will emerge without the Termination Fee and lock-ups and what such an offer will be, the harm caused by the deal protection devices cannot be properly calculated or sufficiently remedied post-closing.[5] Courts have often found a threat of irreparable harm in cases such as this. *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 38 (2d Cir. 1995) (irreparable harm exists where there is threatened imminent loss that will be difficult to quantify at trial); *N.K.S. Distribs., Inc. v. Tigani,* C.A. No. 4640-VCP, 2010 WL 2367669, at *5 (Del. Ch. June 7, 2010)

---

[5] Because this instant case presents this same type of situation, monetary damages would not be sufficient to compensate shareholders because of the presence of preclusive deal protection devices and a flawed sales process, the cases Defendants cite in this regard, including *Botton v. Ness Techs., Inc.*, C.A. No. 11-3950 (SRC) (MAS) (D.N.J. Aug. 4, 2011); *Leone v. King Pharms.*, *Inc.*, No. 2:10-cv-230, 2010 WL 4736271 (E.D. Tenn. Nov. 16, 2010); *Gianmargo v. Snapple Beverage Corp.*, C.A. No. 13845, 1994 WL 672698 (Del. Ch. Nov. 15, 1994); *In re W. Nat'l Corp. S'holders Litig.*, No. 15927, 1998 WL 51733 (Del. Ch. Feb. 4, 1998); *In re Int'l Jensen Inc. S'holders Litig.*, No. Civ. A. 14992, 1996 WL 422345 (Del. Ch. July 13, 1996), are inapplicable.

("where an after-the-fact attempt to quantify damages would 'involve [a] costly exercise[ ] in imprecision' and would not provide full, fair, and complete relief for the alleged wrong.").

Defendants also incorrectly claim that the Proposed Transaction is not expected to close until the first half of 2012 and therefore Plaintiff will have ample opportunity to address its concerns in the ordinary course. *See* Br. at 16. To the contrary, the harm to Plaintiff and the other Medco shareholders is occurring *now*, since the $950 million Termination Fee and other lock-ups effectively block any competing offers from emerging and have the coercive effect of forcing the Company's shareholders to vote for the deal even though there was no shopping process. The lengthy period between the announcement of the Proposed Transaction and the shareholder vote only exacerbates the harm. As the recent stock market turbulence highlights, the world can change significantly over the next nine months. The Board needs the flexibility to change its recommendation on the deal without triggering a massive cash payment to Express Scripts. Indeed, even if a competing bid were to emerge despite the Termination Fee, which is highly unlikely, the payment of the Termination Fee would essentially transfer almost a billion dollars to Express Scripts that rightly belongs to the Company's shareholders. Under similar circumstances, courts have found the alleged harm to be imminent. *See Police & Fire Ret. Sys. of City of Detroit v. Bernal*, C.A. No. 4663-CC, 2009 WL 1873144, at *3 (Del. Ch. June 26, 2009) (stating "[t]he opportunity for a shareholder vote sometime in the future . . . does not address the alleged current deterrent effect of the deal protection measures"); *see also In re Del Monte Foods Co. S'holders Litig.*, C.A. No. 6027-VCC, 2011 WL 532014, at *22 (Del. Ch. Feb. 14, 2011) (plaintiffs showed necessary threat of irreparable harm because absent an injunction stockholders would be deprived forever of opportunity to receive pre-vote topping bid as a result

7

of deal protection measures that were the product of a fiduciary breach and that could not readily be remedied post-closing after a full trial).[6]

In short, Plaintiff has shown not only that there exists a real threat of irreparable injury warranting expedited discovery, but that such irreparable harm is imminent and cannot be adequately cured later.

### III.   The Balance Of Equities Favors Expedition

A balancing of the equities here also weighs strongly in favor of granting Plaintiff expedited discovery.  On the one hand, in the absence of expedited discovery and a modification of the preclusive lock-ups, Medco stockholders will forever lose the chance for a competitive process that could lead to a higher sale price for their Company.  Medco was not actively shopped and therefore Plaintiff and the other shareholders have no way of knowing whether the Proposed Transaction represents the best offer available.  Moreover, without expedited proceedings, Plaintiff's prosecution of its action would be severely hampered.  Most likely, Plaintiff will be forced to assemble a record to support injunctive relief in three to four week window – between Defendants' setting the vote and actually holding it.  This artificial delay and

---

[6]   *Sinclair Nat'l Bank v. Office of the Comptroller of the Currency*, No. 00-2398 HHK/DR, 2000 WL 34012862, at *3 (D.D.C. Dec. 18, 2000), which Defendants cite in support, is inapposite because there, the plaintiff, a national bank, sought expedited discovery in an action alleging that U.S. officials were engaging in racially-motivated conduct designed to inhibit the bank's program of making funds available to minorities for consumer and affordable housing loans. *Id.* at *1.  The court found that the bank failed to show any irreparable injury that would occur in the absence of expedited discovery but instead offered only "speculative references to any harm," and further failed to even "allege that any of the feared harm [wa]s imminent, or even ha[d] been threatened." *Id.* at *3.  Here, there is no time to delay the discovery process as a result of any "lengthy" antitrust clearance process or otherwise.  As set forth above, the Board failed to adequately shop the Company before agreeing to the Express Scripts offer on terms that include a bloated Termination Fee and other preclusive lock-ups that all but force Plaintiff and the other Medco shareholders to accept the offer on the terms set forth in the merger agreement.  The irreparable harm described herein is not only imminent but occurring at this moment.

rush through discovery would harm Plaintiff's ability to effectively litigate the claims and obtain timely and meaningful relief for Medco's shareholders.

On the other hand, Defendants will incur minimal harm if expedited relief is granted. The discovery requested is specifically tailored to the Medco Board's conduct with respect to the Proposed Transaction and Defendants likely have a significant portion of the documents Plaintiff requests readily available. Also, the shareholder vote is not yet scheduled, and the closing of the Proposed Transaction is not expected to take place until 2012. Therefore, assuming expedited discovery and relief is promptly granted, there is more than sufficient time to cure the wrongs alleged and to hold a proper sale process in order to maximize shareholder value. As the court stated in *ACE Ltd. v. Capital Re Corp.*, under similar circumstances, "[t]he merger has not closed, the eggs have not been 'scrambled,' and the court would not be in the position of unscrambling them." 747 A.2d 95, 109 (Del. Ch. 1999). "Put another way, the transaction has not gotten to the point where [Express Scripts'] investment and settled expectations in the deal are so substantial that it is unfair for [its] contract rights to give way to the interests of [Medco's] shareholders." *Id.*

Furthermore, the absence of a competing offer does not, as Defendants argue, make expedited proceedings in advance of a preliminary injunction motion inappropriate. (Br. at 17.) In making this argument, Defendants again overlook the crux of Plaintiff's claim. This is not just a claim that the transaction price is inadequate. Rather, Plaintiff claims that the entire process was flawed as a result of the exorbitant Termination Fee and preclusive lock-ups, coupled with the Board's failure to adequately shop the Company prior to agreeing to the Proposed Transaction. As a result, there can be no superior bid on the table and the fact that no rival offer is pending is irrelevant. Defendants' reliance on *Solash v. Telex Corp.*, 1988 WL

9

3587 (Del. Ch. Jan. 19, 1998), is misplaced. There, after expedited discovery, plaintiffs sought preliminary and permanent injunctive relief against the closing of a tender offer for 90% of the shares of the target company's common stock. The court found that such an injunction would threaten the "sole outside opportunity that the shareholders have for a change-in-control transaction at a substantial premium," which "prospect was developed after a canvass of some fifty firms" that was "pursued with diligence" yet failed to uncover "any active interest" in acquiring the company in a comparable transaction at a similar price. *Id.* at *1, *3.

Here, there was no similar canvassing of other potential acquirers or meaningful inquiry into alternative transactions. Therefore, there is no rival offer because there simply couldn't be one. Defendants locked up this deal with a Termination Fee and preclusive deal protection measures that make it nearly impossible for another bid to emerge, and even if it did, and the Company was to accept such an offer, it would have to shell out almost a billion dollars to Express Scripts.

Accordingly, the irreparable injury that Plaintiff and the other Medco shareholders will suffer without expedited discovery looms far greater than any potential injury that Defendants could possibly suffer if the expedited relief is granted.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that its application for expedited proceedings, including discovery, be granted in its entirety.

CARELLA, BYRNE, CECCHI,<br>
OLSTEIN, BRODY & AGNELLO, P.C.<br>
Attorneys for Plaintiff<br>
<br>
By:  *James E. Cecchi*<br>
     JAMES E. CECCHI

Dated: August 12, 2011

Of Counsel:

Mark Lebovitch
Brett M. Middleton
Jeremy Friedman
BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

Jay W. Eisenhofer
Michael J. Barry
GRANT & EISENHOFER P.A.
1201 N. Market Street
Wilmington, Delaware 19801
(302) 622-7000