1

2

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK:   TRIAL TERM PART 54

- - - - - - - - - - - - - - - - - - - - - X

MICHAEL WRIGHT, Individually and on behalf
of all others similarly situated,

                    Plaintiff,

          - against -

M&F WORLDWIDE CORP., RONALDO O. PERELMAN,
PHILIP E. BEEKMAN, WILLIAM C. BEVINS,
MARTHA L. BYORUM, CHARLES T. DAWSON,
VIET D. DINH, THEO W. FOLZ, JOHN M. KEANE,
PAUL M. MEISTER, BARRY F. SCHWARTZ,
BRUCE SLOVIN, STEPHEN G. TAUB,
CARL B. WEBB, and MACANDREWS & FORBES
HOLDINGS, INC.,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - X

Index No. 651707/2011

Motion                    60 Centre Street
                          New York, New York
                          September 15, 2011

BEFORE:

          HONORABLE SHIRLEY WERNER KORNREICH,

                    Justice.

```
 1

 2

 3    APPEARANCES:

 4         BROWER PIVEN, P.C.
           Attorneys for the Plaintiff
 5         488 Madison Avenue, Eighth Floor
           New York, New York  10023
 6              BY:  BRIAN C. KERR, ESQ., Of Counsel

 7

           SKADDEN, ARPS, SLATE MEAGHER & FLOM, LLP
 8         Attorneys for Defendants Macandrews & Forbes,
                Schwartz, Perelman and Bevins
 9         1100 Market Street #1
           Wilmington, Delaware  19899
10              BY:  THOMAS J. ALLINGHAM, ESQ., Of Counsel

11

           WILLKIE FARR & GALLAGHER
12         Attorneys for Defendants Byorum, Dinh,
                Meister and Webb
13         787 Seventh Avenue
           New York, New York  10019-6099
14              BY:  TODD G. COSENZA, ESQ., Of Counsel

15

           PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
16         Attorneys for Defendants M&F Worldwide,
                Beekman, Dawson, Taub, Keane and Slovin
17         1285 Avenue of the Americas
           New York, New York  10019-6064
18              BY:  DANIEL J. LEFELL, ESQ., Of Counsel

19

20

21

                   BARBARA STROH, CSR, CRR, CMR
22                 OFFICIAL COURT REPORTER

23

24

25

26
```

| | |
|---|---|
| 1 | Proceedings |
| 2 | THE COURT:  This is a class action.  Well, |
| 3 | it's an action that seeks to become a class action, I |
| 4 | should say, and it's a motion to consolidate this case |
| 5 | with another case involving the same defendants and the |
| 6 | same issues. |
| 7 | There are four Delaware class actions |
| 8 | involving the same matter and two New York actions |
| 9 | involving this matter. |
| 10 | All the actions were commenced within a |
| 11 | one-week period in June of this year, between, I |
| 12 | believe, June 14 and June 23. |
| 13 | So it's a little more than one week, but |
| 14 | basically all of the actions were commenced very close |
| 15 | in time, basically the same time. |
| 16 | At this point the two New York actions seek to |
| 17 | be consolidated, and they asked for interim, I guess |
| 18 | it's co-lead counsel to be appointed, and there is a |
| 19 | cross-motion or -- I guess they are cross-motions. |
| 20 | MR. ALLINGHAM:  Yes, your Honor. |
| 21 | THE COURT:  Several, seeking to either dismiss |
| 22 | or stay the New York actions in favor of the Delaware |
| 23 | actions. |
| 24 | I'll hear you. |
| 25 | MR. KERR:  Your Honor, we're the plaintiff, so |
| 26 | it's our original motion for consolidation. |

|     |                                                            |
| --- | ---------------------------------------------------------- |
| 1   | Proceedings                                                |
| 2   | THE COURT:  Yes.                                           |
| 3   | MR. KERR:  Brian Kerr, from Brower Piven for              |
| 4   | the plaintiff.                                             |
| 5   | Your Honor, we think it's clear that the two              |
| 6   | cases are similar.  They raise similar allegations,       |
| 7   | have similar parties, and the defendants' only           |
| 8   | opposition --                                              |
| 9   | THE COURT:  They meet the New York                        |
| 10  | consolidation standard, and they should be consolidated   |
| 11  | under New York statute?                                   |
| 12  | MR. KERR:  That's our position.                           |
| 13  | THE COURT:  That's what your position is.  And           |
| 14  | now you're seeking that you and counsel in the Feit       |
| 15  | action be appointed interim co-lead counsel.             |
| 16  | MR. KERR:  That's right.                                  |
| 17  | THE COURT:  All right, let me hear from the              |
| 18  | other side.  The other side, I mean when talking about   |
| 19  | these class actions, basically we're talking about the   |
| 20  | same thing.  It's clear that different courts shouldn't  |
| 21  | be rendering different decisions.                         |
| 22  | MR. ALLINGHAM:  We agree with that, your                 |
| 23  | Honor.                                                     |
| 24  | THE COURT:  I mean that's your argument.                  |
| 25  | MR. ALLINGHAM:  Yes.                                       |
| 26  | THE COURT:  Your argument is that these cases            |

1              Proceedings

2    would be better brought in Delaware, is that what

3    you're, arguments.

4              MR. ALLINGHAM:  Yes, for several reasons, your

5    Honor.

6              THE COURT:  Let me hear you.

7              MR. ALLINGHAM:  Your Honor, Tom Allingham,

8    Skadden, Arps.  I represent Macandrews & Forbes, Mr.

9    Schwartz, Mr. Perelman and Mr. Bevins.

10             The answer, your Honor, is that both on

11   objective rules which are the general rules in New York

12   courts, that is the first filed rule which is --

13             THE COURT:  Well, you know, let me start by

14   saying in terms of the first filed rule that is not an

15   issue here because they were commenced -- all these

16   actions, all six actions were commenced so close in

17   time, that to this court's mind they were all commenced

18   at the same time.

19             This is not a race to the courthouse by a day

20   or two.  I think the notice of what was going to happen

21   occurred on June 13.  Somehow one law firm managed to

22   file on the 14th.  Others filed on the 16th, 23th, but,

23   you know, basically it was all the same.  So let's

24   ignore that factor.

25             MR. ALLINGHAM:  Let me turn to the other

26   issues, but let's me just say one thing about the first

|   |   |
|---|---|
| 1 | Proceedings |
| 2 | filed rule.  Has the utility of being an objective, |
| 3 | clear standard, where there weren't other factors that |
| 4 | would distinguish between the two forums.  There are -- |
| 5 | THE COURT:  There are many factors here, so |
| 6 | let's turn to those because, frankly, I don't plan on |
| 7 | giving out race issues and I think it's not the way to |
| 8 | determine this case. |
| 9 | MR. ALLINGHAM:  Fair enough, your Honor.  I |
| 10 | would say that there are two powerful reasons why the |
| 11 | Delaware forum is the right forum.  The first of these |
| 12 | is that the Delaware forum is significantly more |
| 13 | advanced than this forum. |
| 14 | We have had in the Delaware case |
| 15 | consolidation, establishment of class structure, |
| 16 | answers to the operative consolidated complaint, |
| 17 | discovery requests, both to the parties and to third |
| 18 | parties, and since the announcement of an actual |
| 19 | proposal -- and your Honor, I don't know.  The papers |
| 20 | don't actually because they were filed before it |
| 21 | happened.  It might be worthwhile to give you 60 |
| 22 | seconds of background.  The transaction proposal from |
| 23 | my client was announced on June 13. |
| 24 | A special committee which is represented by |
| 25 | Mr. Madea from Willkie Farr was formed by the |
| 26 | Macandrews & Forbes Worldwide board. |

1          Proceedings

2          THE COURT:   This was supposedly independent

3     directors?

4          MR. ALLINGHAM:   No question about it.   Under

5     any rules, New York Stock Exchange rule any rule these

6     are independent directors.   They then retain Willkie

7     Farr as independent counsel and every court partners

8     investment bank to do their own analysis.

9          For in next call it 8 to 10 weeks of intensive

10    analysis, due diligence, interviews with management, so

11    forth, the special committee and its advisers examined

12    the proposal from my clients.

13          It was not until last week that final

14    negotiations arrived at a transaction which could be

15    approved by the special committee and ultimately

16    presented to the M & F Worldwide board over the

17    weekend, and on Monday morning a new transaction at a

18    higher price was announced.

19          Since that actual transaction, as opposed to

20    merely a proposal was announced, Chancellor Strine has

21    entered a scheduling order which leads to -- which sets

22    deadlines for all of the various aspects of the case in

23    and which leads to a final preliminary injunction

24    hearing on December 19 at 9:30 in his court.

25          So that Delaware case is set up and structured

26    and scheduled to be addressed in a timely fashion,

1                           Proceedings

2       before year end, which is what the company have said if

3       everything breaks right, the transaction might close by

4       year end.

5              In addition to that, Chancellor Strine has

6       considered the question of class certification and a

7       certified class identical, in fact, to the class that's

8       proposed here and certified that class in an order that

9       was entered yesterday.

10             Plaintiffs here, in fact, are members of that

11      class.   Their interests will be protected by counsel

12      representing that class.

13             Those counsel -- I don't think my friends

14      would dispute that they are equally distinguished on

15      the plaintiff sidebar as counsel here.

16             So I doubt that they would say that their

17      interests would not be well protected, but if they do,

18      they have an option.

19             THE COURT:   They can intervene.

20             MR. ALLINGHAM:   They can intervene.

21             THE COURT:   That's your argument.

22             MR. ALLINGHAM:   And we know the Court of

23      Chancery is sympathetic to motions to intervene, your

24      Honor particularly where people with come together to

25      litigate in one forum.

26             So the Delaware action is fully tee'd up to

1              Proceedings

2      accomplish the Delaware goal that, of course, this

3      court could also accomplish, but the Delaware action is

4      ahead of the game.

5              The second issue is Delaware has a powerful

6      interest in the issues that are presented in this case.

7              THE COURT:  Well, you know, again we're

8      talking here about companies that are incorporated or

9      chartered, they're Delaware companies.

10             However, they do business in New York.  One of

11     them is traded on the New York Stock Exchange.  Almost

12     all the witnesses and all the documents are in New

13     York.  The plaintiffs, named plaintiffs are New York

14     residents.

15             New York has a tremendous interest in this.

16     So I don't know if that argument is very strong.

17             MR. ALLINGHAM:  Let me first take the facts

18     that were taken from my friends pleadings or brief and

19     address those.

20             First of all, one of the two named plaintiffs

21     is a New York resident, the other is not.

22             Counsel --

23             THE COURT:  What about the witnesses?  What

24     about the businesses?  What about the documents?  What

25     about the plaintiffs?  They're all in New York.

26             MR. ALLINGHAM:  Your Honor, in dealing with

| | |
|---|---|
| 1 | Proceedings |
| 2 | transaction cases like this, everyone understands that |
| 3 | you go where the evidence is. |
| 4 | THE COURT:  You go where the evidence is, but |
| 5 | New York has tremendous interest in this as well. |
| 6 | MR. ALLINGHAM:  And the burden on parties will |
| 7 | be absolutely no different in going to where the |
| 8 | evidence is, with one exception, your Honor. |
| 9 | The hearing would be held in the court of |
| 10 | chancery.  In Delaware, which has a powerful interest |
| 11 | in the application of its corporate law to corporations |
| 12 | incorporated in Delaware, which comports with the |
| 13 | expectations of the parties who incorporate there and |
| 14 | the investors who buy shares in Delaware corporations. |
| 15 | Now, that is not to say, your Honor, that your |
| 16 | Honor, if not fully capable of deciding Delaware |
| 17 | corporate law questions.  We all know that you are. |
| 18 | Courts all over the country all the time apply the law |
| 19 | of other states. |
| 20 | But it does mean that Delaware has a uniquely |
| 21 | powerful interest in the application of its law to |
| 22 | corporations, the internal affairs document, your Honor |
| 23 | is familiar with. |
| 24 | And the question then becomes, where does the |
| 25 | principle of comity direct us?  If a New York law case |
| 26 | were presented to the Court of Chancery, we know |

| | |
|---|---|
| 1 | Proceedings |
| 2 | that -- |
| 3 | THE COURT:  As I said, I don't really think |
| 4 | this is a strongest argument for you, given the fact |
| 5 | that every court probably, probably every court in the |
| 6 | country deals with Delaware corporations and Delaware |
| 7 | law, but certainly New York time and again has to deal |
| 8 | with this. |
| 9 | This is sort of the immediate and potatoes of |
| 10 | the commercial division, so I don't really think, just |
| 11 | that this is a strong argument, but -- |
| 12 | MR. ALLINGHAM:  Let me come back to the |
| 13 | convenience issue, your Honor.  We all should -- I |
| 14 | think we all agree that there should not be two |
| 15 | simultaneous procedures with all the risks that are |
| 16 | attendant on that:  Inconsistent results, additional |
| 17 | burden, additional counsel, the works. |
| 18 | So, the question is where should we proceed? |
| 19 | In terms of the convenience, the depositions are going |
| 20 | to be taken wherever the witnesses are, and it doesn't |
| 21 | matter where the case is pending.  That's where they're |
| 22 | going to be. |
| 23 | The documents are going to be delivered |
| 24 | electronically to the plaintiff's counsel wherever they |
| 25 | may be, and there is no burden. |
| 26 | THE COURT:  In New York. |

1    Proceedings

2              MR. ALLINGHAM:  But it's electronic delivery.

3              THE COURT:  I understand.

4              MR. ALLINGHAM:  It's electronic delivery.

5              By the way, both counsel have offices

6    elsewhere.  They're not only in New York.  I happen to

7    be a member of the Delaware bar, and have been involved

8    in this transaction from the start.

9              So it is an overstatement to say all the

10   witnesses will be found in Manhattan.  It's just not

11   the case.

12             But my  point is, in a transaction, in a deal

13   case like this, the case will proceed the same way and

14   the burdens will be the same right up to the final

15   hearing, and then it's an Amtrak train ride down to

16   Wilmington.

17             Where you have -- I take your Honor's point,

18   but where you have the interest recognized by our

19   courts of Delaware courts in addressing issues of

20   Delaware law, the State of Delaware has a powerful

21   interest in that issue.

22             Where you have this case fully tee'd up and an

23   entered scheduling order and with a class certified in

24   which these plaintiffs are already members and can

25   intervene if they didn't like the way their interests

26   are being represented, then I would submit to your

1                          Proceedings

2       Honor that the -- I don't mean to trivialize it, but

3       the cost of train tickets to Wilmington should hardly

4       be the deciding factor.

5                   THE COURT:  Okay, let me hear from the other

6       side.

7                   MR. KERR:  Thank you, your Honor.

8                   On the first argument about the Delaware case

9       being more advanced, the main reason why that's the

10      case is because the defendants are cooperating in

11      Delaware.  They're not cooperating here.

12                  For example, they say that they filed the

13      answer to the complaint in Delaware.

14                  Well, their answer was due here, and they

15      never filed it.  We didn't hear from them.

16                  THE COURT:  Did you do anything?

17                  MR. KERR:  We called them and said, you know,

18      your answer is due.  They said, give us --

19                  THE COURT:  Did you come to court to do

20      anything?

21                  MR. KERR:  No, we did not.  As a courtesy we

22      called counsel and told them that, your answer is due.

23      What's going on?

24                  They asked for an extension until August 1,

25      which we gave them, and in the meantime they filed this

26      motion to stay our case.

1         Proceedings

2              So the fact that the answer wasn't filed,

3    their answer would have been filed here had they done

4    so timely.

5              THE COURT:  I understand, but you also did

6    nothing to move this case along.

7              MR. KERR:  Well, I don't know if that's

8    accurate either, your Honor, because as soon as the

9    second case was filed here, we promptly moved for

10   consolidation back in July.

11             So the fact that the cases are consolidated in

12   Delaware but not here, we asked for that relief two

13   months ago and because there were scheduling issues,

14   that was put off until now.

15             As far as far as the discovery taking place,

16   we have served discovery requests, we have served the

17   financial advisers here in New York.

18             The discovery was delayed both in Delaware and

19   New York until the deal was announced just this week.

20   So the idea that somehow discovery is so far out ahead

21   in Delaware and it's not here, my guess is they haven't

22   produced any documents in Delaware yet.

23             If they did, they probably did so just this

24   week.  I don't know if we can get an answer on that.

25   My expectation is that no documents have been

26   exchanged.

```
 1                            Proceedings
 2                Certainly no depositions have taken place, and
 3      the same requests were served in Delaware that were
 4      served here.
 5                On the class certification issue, that just
 6      happened.  My guess is, again, that class
 7      certifications were stipulated to or not opposed by the
 8      defendants in Delaware, which led to it being granted
 9      down there.  So I don't think that that's a very
10      compelling argument.
11                On the interest, as your Honor pointed out,
12      one of the plaintiffs is here.  The defendants are
13      here.  The reason why the discovery is here is because
14      the conduct occurred here, which I think far outweighs
15      whatever interests the Delaware court is going to have
16      in applying the law.
17                Finally, I do seem to raise this idea about
18      cases going on in two different tracks.  We said in our
19      papers that we would work with Delaware.  We don't want
20      to do the same exact thing twice.
21                First of all, the documents are just an extra
22      copy.  On the depositions, we're not saying that we're
23      going to take the same exact deposition and waste
24      everyone's time.
25                The idea is we're rightfully here.  The only
26      edge in Delaware is the fact that they filed a couple
```

| 1 | Proceedings |
|---|---|

2    days before us.

3          The only other difference is the defendants

4    like Delaware more than they like New York, which is

5    why there appears to be progress.

6          So we would suggest that the appropriate rule

7    here is that, rather than dismissing us or staying us,

8    that your Honor enter an order that says we coordinate

9    with Delaware, which we're happy to do, as no one is

10   interested in doing things twice, wasting everyone's

11   time.

12         Your Honor, I think it worked in other cases.

13   It worked in the New York Stock Exchange merger case.

14   The parties in New York worked with Delaware.  I was

15   involved in the case, and it worked.

16         THE COURT:  Well, that only happened -- what

17   happened when I got the case -- and I sort of forced

18   the hand in that, but it was a much more -- it was a

19   case in which there were more New York actions than

20   Delaware actions there and, surprisingly enough, there

21   the defendants and the Delaware court were arguing that

22   it didn't matter which action was first filed, although

23   in that case the New York actions came way before the

24   Delaware actions, and we had more actions here than in

25   Delaware, and neither case was further ahead at that

26   point, and it got moved, and I just felt that was a

|   |   |
|---|---|
| 1 | Proceedings |
| 2 | fair thing to do. |
| 3 | Frankly, I'm ready to rule on this.  At this |
| 4 | point, you know, just looking at all the factors, |
| 5 | again, I do not think there is such a burden on this |
| 6 | court.  I do not think there is such a burden to |
| 7 | determine the law because we determine in this court |
| 8 | Delaware law all the time.  So, there is no burden on |
| 9 | the court. |
| 10 | I think New York has an interest here, |
| 11 | basically, because one of the companies is traded on |
| 12 | the New York exchange, and the companies do business in |
| 13 | New York.  The witnesses are here; the documents are |
| 14 | here. |
| 15 | We have a tremendous interest just by the fact |
| 16 | that business is done here. |
| 17 | Hardships in litigating:  I don't think there |
| 18 | is a hardship here.  There probably isn't a hardship in |
| 19 | Delaware either. |
| 20 | As I said, I don't think -- because of what I |
| 21 | said, I don't think there is a jurisdiction on Delaware |
| 22 | or New York with greater interest, that both states |
| 23 | have a tremendous interest, and there is no burden on |
| 24 | the New York court. |
| 25 | There are two things that disturb the court |
| 26 | tremendously.  One is that the Delaware case is much |

1                          Proceedings

2       advanced to this case, and nothing was done to push

3       this case by the plaintiffs.

4              The other thing is that there would be a

5       tremendous potential for inconsistent verdicts.  In the

6       New York Stock Exchange case we did -- I did issue CMOs

7       coordinating everything, but that was at the very

8       beginning of the case.

9              This case has already started and gone very

10      quickly in Delaware.  It has not started here.

11             So I think there is a difference there.  I'm

12      not sure that the Delaware court would agree to hold

13      joint hearings, so the verdicts could possibly be

14      consistent.

15             I've done that with other Federal courts in

16      other matters.  That did not happen in the New York

17      Stock Exchange case.  I don't believe the Delaware

18      court was amenable to that.

19             They probably wouldn't be amenable to that

20      here either, so there is really a tremendous potential

21      for inconsistent rulings, which is a very disturbing

22      factor because we're dealing with the exact same case,

23      and we can't have inconsistent rulings.

24             I don't think, if this court dismissed these

25      cases, the two cases here, Feit as well as this case,

26      that there would be any prejudice because the

| | |
|---|---|
| 1 | Proceedings |
| 2 | plaintiffs are represented, and they could intervene in |
| 3 | the Delaware case, and I don't believe Feit would |
| 4 | dismiss, I wouldn't dismiss with prejudice. |
| 5 | I would dismiss on condition that the |
| 6 | plaintiffs be permitted to intervene in Delaware and |
| 7 | start an action there if they wanted to. |
| 8 | So, at this point what I am going to do is I |
| 9 | am going to deny the motion to consolidate and to |
| 10 | appoint interim lead counsel or co-lead counsel here, |
| 11 | and I am going to grant the motion to dismiss in this |
| 12 | case. |
| 13 | I believe that's just the best thing to do in |
| 14 | this case, and it's the fairest and the most just thing |
| 15 | to do, so that this case can proceed as quickly as |
| 16 | possible. |
| 17 | This shall constitute the decision and order |
| 18 | of the court. |
| 19 | MR. ALLINGHAM:  Thank you, your Honor. |
| 20 | |
| 21 | (End of proceedings) |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |

1

2

3                                    *    *    *

4

5                      CERTIFIED TO BE A TRUE AND ACCURATE TRANSCRIPT

6          OF THE ORIGINAL STENOGRAPHIC MINUTES TAKEN OF THIS
           PROCEEDING.

7
                         *Barbara Stroh*
8

9                       BARBARA STROH, CSR, CMR, CRR
                           Senior Court Reporter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**1**

1 [2] - 2:9, 13:24
10 [1] - 7:9
10019-6064 [1] - 2:17
10019-6099 [1] - 2:13
10023 [1] - 2:5
1100 [1] - 2:9
1285 [1] - 2:17
13 [1] - 5:21, 6:23
14 [1] - 3:12
14th [1] - 5:22
15 [1] - 1:19
16th [1] - 5:22
19 [1] - 7:24
19899 [1] - 2:9

**2**

2011 [1] - 1:19
23 [1] - 3:12
23th [1] - 5:22

**4**

488 [1] - 2:5

**5**

54 [1] - 1:4

**6**

60 [2] - 1:18, 6:21
651707/2011 [1] - 1:17

**7**

787 [1] - 2:13

**8**

8 [1] - 7:9

**9**

9:30 [1] - 7:24

**A**

absolutely [1] - 10:7
accomplish [2] - 9:2, 9:3

accurate [1] - 14:8
ACCURATE [1] - 20:5
action [8] - 3:2, 3:3, 4:15, 6:26. 9:3, 16:22, 19:7
actions [15] - 3:7, 3:8, 3:10, 3:14, 3:16, 3:22, 3:23, 4:19, 5:16, 16:19, 16:20, 16:23, 16:24
actual [2] - 6:18, 7:19
addition [1] - 8:5
additional [2] - 11:16, 11:17
address [1] - 9:19
addressed [1] - 7:26
addressing [1] - 12:19
advanced [3] - 6:13, 13:9, 18:2
advisers [2] - 7:11, 14:17
affairs [1] - 10:22
ago [1] - 14:13
agree [3] - 4:22, 11:14, 18:12
ahead [3] - 9:4, 14:20, 16:25
allegations [1] - 4:6
ALLINGHAM [16] - 2:10, 3:20, 4:22, 4:25, 5:4, 5:7, 5:25, 6:9, 7:4, 8:20, 8:22, 9:17, 9:26, 10:6, 11:12, 12:2, 12:4, 19:19
Allingham [1] - 5:7
almost [1] - 9:11
amenable [2] - 18:18, 18:19
Americas [1] - 2:17
Amtrak [1] - 12:15
analysis [2] - 7:8, 7:10
AND [1] - 20:5
announced [4] - 6:23, 7:18, 7:20, 14:19
announcement [1] - 6:18
answer [8] - 5:10, 13:13, 13:14, 13:18, 13:22, 14:2, 14:3, 14:24
answers [1] - 6:16
APPEARANCES [1] - 2:3
application [2] - 10:11, 10:21

apply [1] - 10:18
applying [1] - 15:16
appoint [1] - 19:10
appointed [2] - 3:18, 4:15
appropriate [1] - 16:6
approved [1] - 7:15
arguing [1] - 16:21
argument [8] - 4:24, 4:26, 8:21, 9:16, 11:4, 11:11, 13:8, 15:10
arguments [1] - 5:3
ARPS [1] - 2:7
Arps [1] - 5:8
arrived [1] - 7:14
aspects [1] - 7:22
attendant [1] - 11:16
Attorneys [4] - 2:4, 2:8, 2:12, 2:16
August [1] - 13:24
Avenue [3] - 2:5, 2:13, 2:17

**B**

background [1] - 6:22
bank [1] - 7:8
bar [1] - 12:7
BARBARA [2] - 2:21, 20:9
BARRY [1] - 1:11
BE [1] - 20:5
become [1] - 3:3
becomes [1] - 10:24
Beekman [1] - 2:16
BEEKMAN [1] - 1:10
BEFORE [1] - 1:20
beginning [1] - 18:8
behalf [1] - 1:6
best [1] - 19:13
better [1] - 5:2
between [2] - 3:11, 6:4
Bevins [2] - 2:8, 5:9
BEVINS [1] - 1:10
board [2] - 6:26, 7:16
breaks [1] - 8:3
Brian [1] - 4:3
BRIAN [1] - 2:6
brief [1] - 9:18
brought [1] - 5:2
BROWER [1] - 2:4
Brower [1] - 4:3
BRUCE [1] - 1:12
burden [2] - 10:6, 11:17, 11:25, 17:5, 17:6, 17:8, 17:23

burdens [1] - 12:14
business [3] - 9:10, 17:12, 17:16
businesses [1] - 9:24
buy [1] - 10:14
BY [4] - 2:6, 2:10, 2:14, 2:18
BYORUM [1] - 1:10
Byorum [1] - 2:12

**C**

capable [1] - 10:16
CARL [1] - 1:12
case [37] - 3:4, 3:5, 6:8, 6:14, 7:22, 7:25, 9:6, 10:25, 11:21, 12:11, 12:13, 12:22, 13:8, 13:10, 13:26, 14:6, 14:9, 16:13, 16:15, 16:17, 16:19, 16:23, 16:25, 17:26, 18:2, 18:3, 18:6, 18:9, 18:9, 18:17, 18:22, 18:25, 19:3, 19:12, 19:14, 19:15
cases [8] - 4:6, 4:26, 10:2, 14:11, 15:18, 16:12, 18:25
Centre [1] - 1:18
certainly [2] - 11:7, 15:2
certification [2] - 8:6, 15:5
certifications [1] - 15:7
CERTIFIED [1] - 20:5
certified [3] - 8:7, 8:8, 12:23
Chancellor [2] - 7:20, 8:5
chancery [1] - 10:10
Chancery [2] - 6:23, 10:26
CHARLES [1] - 1:10
chartered [1] - 9:9
class [14] - 3:2, 3:3, 3:7, 4:19, 6:15, 8:6, 8:7, 8:8, 8:11, 8:12, 12:23, 15:5, 15:6
clear [3] - 4:5, 4:20, 6:3
client [1] - 6:23
clients [1] - 7:12
close [3] - 3:14, 5:16, 8:3
CMOs [1] - 18:6
CMR [2] - 2:21, 20:9

co [3] - 3:18, 4:15, 19:10
co-lead [3] - 3:18, 4:15, 19:10
comity [1] - 10:25
commenced [5] - 3:10, 3:14, 5:15, 5:16, 5:17
commercial [1] - 11:10
committee [3] - 6:24, 7:11, 7:15
companies [4] - 9:8, 9:9, 17:11, 17:12
company [1] - 8:2
compelling [1] - 15:10
complaint [2] - 6:16, 13:13
comports [1] - 10:12
condition [1] - 19:5
conduct [1] - 15:14
considered [1] - 8:6
consistent [1] - 18:14
consolidate [2] - 3:4, 19:9
consolidated [4] - 3:17, 4:10, 6:16, 14:11
consolidation [4] - 3:26, 4:10, 6:15, 14:10
constitute [1] - 19:17
convenience [2] - 11:13, 11:19
cooperating [2] - 13:10, 13:11
coordinate [1] - 16:8
coordinating [1] - 18:7
copy [1] - 15:22
CORP [1] - 1:9
corporate [2] - 10:11, 10:17
corporations [4] - 10:11, 10:14, 10:22, 11:6
COSENZA [1] - 2:14
cost [1] - 13:3
counsel [14] - 3:18, 4:14, 4:15, 7:7, 8:11, 8:13, 8:15, 9:22, 11:17, 11:24, 12:5, 13:22, 19:10
Counsel [4] - 2:6, 2:10, 2:14, 2:18
country [2] - 10:18, 11:6
COUNTY [1] - 1:4

couple [1] - 15:26
course [1] - 9:2
COURT [27] - 1:3,
2:22, 3:2, 3:21, 4:2,
4:9, 4:13, 4:17, 4:24,
4:26, 5:6, 5:13, 6:5,
7:2, 8:19, 8:21, 9:7,
9:23, 10:4, 11:3,
11:25, 12:3, 13:5,
13:16, 13:19, 14:5,
16:16
court [16] - 7:7, 7:24,
9:3, 10:9, 11:5, 13:19,
15:15, 16:21, 17:6,
17:7, 17:9, 17:24,
17:25, 18:12, 18:18,
18:24, 19:18
Court [3] - 8:22,
10:26, 20:9
court's [1] - 5:17
courtesy [1] - 13:21
courthouse [1] -
5:19
courts [6] - 4:20,
5:12, 10:18, 12:19,
18:15
cross [2] - 3:19
cross-motion [1] -
3:19
cross-motions [1] -
3:19
CRR [2] - 2:21, 20:9
CSR [2] - 2:21, 20:9

**D**

DANIEL [1] - 2:18
DAWSON [1] - 1:10
Dawson [1] - 2:16
days [1] - 16:2
deadlines [1] - 7:22
deal [3] - 11:7, 12:12,
14:19
dealing [2] - 9:26,
18:22
deals [1] - 11:6
December [1] - 7:24
deciding [2] - 10:16,
13:4
decision [1] - 19:17
decisions [1] - 4:21
defendants [3] - 3:5,
13:10, 15:8, 15:12,
16:3, 16:21
Defendants [4] -
1:14, 2:8, 2:12, 2:16
defendants' [1] - 4:7
Delaware [52] - 2:9,
3:7, 3:22, 5:2, 6:11,

6:12, 6:14, 7:25, 8:26,
9:2, 9:3, 9:5, 9:9,
10:10, 10:12, 10:14,
10:16, 10:20, 11:6,
12:7, 12:19, 12:20,
13:8, 13:11, 13:13,
14:12, 14:18, 14:21,
14:22, 15:3, 15:8,
15:15, 15:19, 15:26,
16:4, 16:9, 16:14,
16:20, 16:21, 16:24,
16:25, 17:8, 17:19,
17:21, 17:26, 18:10,
18:12, 18:17, 19:3,
19:6
delayed [1] - 14:18
delivered [1] - 11:23
delivery [2] - 12:2,
12:4
deny [1] - 19:9
deposition [1] -
15:23
depositions [3] -
11:19, 15:2, 15:22
determine [3] - 6:8,
17:7
difference [2] - 16:3,
18:11
different [4] - 4:20,
4:21, 10:7, 15:18
diligence [1] - 7:10
DINH [1] - 1:11
Dinh [1] - 2:12
direct [1] - 10:26
directors [2] - 7:3,
7:6
discovery [8] - 6:17,
14:15, 14:16, 14:18,
14:20, 15:13
dismiss [5] - 3:21,
19:4, 19:5, 19:11
dismissed [1] -
18:24
dismissing [1] - 16:7
dispute [1] - 8:14
distinguish [1] - 6:4
distinguished [1] -
8:14
disturb [1] - 17:25
disturbing [1] -
18:21
division [1] - 11:10
document [1] - 10:22
documents [7] -
9:12, 9:24, 11:23,
14:22, 14:25, 15:21,
17:13
done [4] - 14:3,
17:16, 18:2, 18:15
doubt [1] - 8:16

down [2] - 12:15,
15:9
due [4] - 7:10, 13:14,
13:18, 13:22

**E**

edge [1] - 15:26
Eighth [1] - 2:5
either [4] - 3:21,
14:8, 17:19, 18:20
electronic [2] - 12:2,
12:4
electronically [1] -
11:24
elsewhere [1] - 12:6
end [3] - 8:2, 8:4,
19:21
enter [1] - 16:8
entered [4] - 7:21,
8:9, 12:23
equally [1] - 8:14
ESQ [4] - 2:6, 2:10,
2:14, 2:18
establishment [1] -
8:16
evidence [3] - 10:3,
10:4, 10:8
exact [3] - 15:20,
15:23, 18:22
examined [1] - 7:11
example [1] - 13:12
exception [1] - 10:8
exchange [1] - 17:12
Exchange [5] - 7:5,
9:11, 16:13, 18:6,
18:17
exchanged [1] -
14:26
expectation [1] -
14:25
expectations [1] -
10:13
extension [1] - 13:24
extra [1] - 15:21

**F**

fact [7] - 8:7, 8:10,
11:4, 14:2, 14:11,
15:26, 17:5
factor [3] - 5:24,
13:4, 18:22
factors [3] - 6:3, 6:5,
17:4
facts [1] - 9:17
fair [2] - 6:9, 17:2
fairest [1] - 19:14

familiar [1] - 10:23
far [4] - 14:15, 14:20,
16:14
FARR [1] - 2:11
Farr [2] - 6:25, 7:7
fashion [1] - 7:26
favor [1] - 3:22
Federal [1] - 18:15
Feit [3] - 4:14, 18:25,
19:3
felt [1] - 16:26
file [1] - 5:22
filed [13] - 5:12, 5:14,
5:22, 6:2, 6:20, 13:12,
13:15, 13:25, 14:2,
14:3, 14:9, 16:26,
16:22
final [3] - 7:13, 7:23,
12:14
finally [1] - 16:17
financial [1] - 14:17
firm [1] - 5:21
first [9] - 6:12, 5:14,
6:26, 6:11, 9:17, 9:20,
13:8, 15:21, 16:22
FLOM [1] - 2:7
Floor [1] - 2:5
FOLZ [1] - 1:11
Forbes [3] - 2:8, 5:8,
6:26
FORBES [1] - 1:12
forced [1] - 16:17
formed [1] - 6:25
forth [1] - 7:11
forum [9] - 5:11,
6:12, 6:13, 8:25
forums [1] - 6:4
four [1] - 3:7
frankly [2] - 6:6, 17:3
friends [2] - 8:13,
9:18
fully [3] - 8:26,
10:16, 12:22

**G**

GALLAGHER [1] -
2:11
game [1] - 9:4
GARRISON [1] -
2:15
general [1] - 5:11
given [1] - 11:4
goal [1] - 9:2
grant [1] - 19:11
granted [1] - 16:8
greater [1] - 17:22
guess [4] - 3:17,
3:19, 14:21, 15:6

**H**

hand [1] - 16:18
happy [1] - 16:9
hardly [1] - 13:3
hardship [2] - 17:18
hardships [1] - 17:17
hear [5] - 3:24, 4:17,
5:6, 13:5, 13:15
hearing [1] - 7:24,
10:9, 12:15
hearings [1] - 18:13
held [1] - 10:9
higher [1] - 7:18
hold [1] - 18:12
HOLDINGS [1] - 1:13
Honor [23] - 3:20,
3:25, 4:5, 4:23, 5:5,
5:7, 5:10, 6:9, 6:19,
6:24, 9:26, 10:8,
10:15, 10:16, 10:22,
11:13, 13:2, 13:7,
14:8, 15:11, 16:8,
18:12, 19:19
Honor's [1] - 12:17
HONORABLE [1] -
1:21

**I**

idea [3] - 14:20,
15:17, 15:25
identical [1] - 8:7
ignore [1] - 5:24
immediate [1] - 11:9
INC [1] - 1:13
inconsistent [4] -
11:16, 18:5, 18:21,
18:23
incorporate [1] -
10:13
incorporated [2] -
9:6, 10:12
independent [3] -
7:2, 7:6, 7:7
index [1] - 1:17
individually [1] - 1:6
injunction [1] - 7:23
intensive [1] - 7:9
interest [12] - 9:8,
9:15, 10:5, 10:10,
10:21, 12:18, 12:21,
15:11, 17:10, 17:15,
17:22, 17:23
interested [1] - 16:10
interests [4] - 8:11,
8:17, 12:25, 15:15
interim [3] - 3:17,

4:15, 19:10
internal [1] – 10:22
intervene [5] – 8:19,
8:20, 8:23, 12:25,
19:2, 19:6
interviews [1] – 7:10
investment [1] – 7:8
investors [1] – 10:14
involved [2] – 12:7,
16:15
involving [3] – 3:5,
3:8, 3:9
issue [6] – 5:15, 9:5,
11:13, 12:21, 16:5,
18:6
issues [5] – 3:6, 6:26,
6:7, 9:6, 12:19, 14:13

**J**

JOHN [1] – 1:11
joint [1] – 18:13
July [1] – 14:10
June [5] – 3:11, 3:12,
5:21, 6:23
jurisdiction [1] –
17:21
Justice [1] – 1:22

**K**

KEANE [1] – 1:11
Keane [1] – 2:16
Kerr [1] – 4:3
KERR [9] – 2:6, 3:25,
4:3, 4:12, 4:16, 13:7,
13:17, 13:21, 14:7
KORNREICH [1] –
1:21

**L**

last [1] – 7:13
law [11] – 5:21,
10:11, 10:17, 10:18,
10:21, 10:25, 11:7,
12:20, 15:16, 17:7,
17:8
lead [4] – 3:18, 4:15,
19:10
leads [2] – 7:21, 7:23
led [1] – 15:8
LEFELL [1] – 2:18
litigate [1] – 8:25
litigating [1] – 17:17
LLP [2] – 2:7, 2:15
looking [1] – 17:4

**M**

M&F [2] – 1:9, 2:16
Macandrews [3] –
2:8, 5:8, 6:26
MACANDREWS [1] –
1:12
Madea [1] – 6:25
Madison [1] – 2:5
main [1] – 13:9
managed [1] – 5:21
management [1] –
7:10
Manhattan [1] –
12:10
Market [1] – 2:9
MARTHA [1] – 1:10
matter [4] – 3:8, 3:9,
11:21, 16:22
matters [1] – 18:16
MEAGHER [1] – 2:7
mean [4] – 4:18,
4:24, 10:20, 13:2
meantime [1] – 13:25
meet [1] – 4:9
Meister [1] – 2:12
MEISTER [1] – 1:11
member [1] – 12:7
members [2] – 8:10,
12:24
merely [1] – 7:20
merger [1] – 16:13
MICHAEL [1] – 1:6
might [2] – 6:21, 8:3
mind [1] – 5:17
MINUTES [1] – 20:6
Monday [1] – 7:17
months [1] – 14:13
morning [1] – 7:17
most [1] – 19:14
Motion [1] – 1:18
motion [6] – 3:4,
3:19, 3:26, 13:26,
19:9, 19:11
motions [2] – 3:19,
8:23
move [1] – 14:6
moved [2] – 14:9,
16:26
MR [26] – 3:20, 3:25,
4:3, 4:12, 4:16, 4:22,
4:25, 5:4, 5:7, 5:25,
6:9, 7:4, 8:20, 8:22,
9:17, 9:26, 10:6,
11:12, 12:2, 12:4,
13:7, 13:17, 13:21,
14:7, 19:19

**N**

named [2] – 9:13,
9:20
negotiations [1] –
7:14
never [1] – 13:15
new [1] – 7:17
NEW [2] – 1:3, 1:4
New [41] – 1:18, 2:5,
2:13, 2:17, 3:8, 3:16,
3:22, 4:9, 4:11, 5:11,
7:5, 9:10, 9:11, 9:12,
9:13, 9:15, 9:21, 9:25,
10:5, 10:25, 11:7,
11:26, 12:6, 14:17,
14:19, 16:4, 16:13,
16:14, 16:19, 16:23,
17:10, 17:12, 17:13,
17:22, 17:24, 18:6,
18:16
next [1] – 7:9
nothing [2] – 14:6,
18:2
notice [1] – 5:20

**O**

objective [2] – 5:11,
6:2
occurred [2] – 5:21,
15:14
OF [5] – 1:3, 1:4, 20:6
offices [1] – 12:5
OFFICIAL [1] – 2:22
one [12] – 3:11, 3:13,
5:21, 5:26, 8:25, 9:10,
9:20, 10:8, 15:12,
16:9, 17:11, 17:26
one-week [1] – 3:11
operative [1] – 6:16
opposed [2] – 7:19,
15:7
opposition [1] – 4:8
option [1] – 8:18
order [5] – 7:21, 8:8,
12:23, 16:8, 19:17
ORIGINAL [1] – 20:6
original [1] – 3:26
outweighs [1] –
15:14
overstatement [1] –
12:9
own [1] – 7:8

**P**

P.C [1] – 2:4

papers [2] – 6:19,
15:19
PART [1] – 1:4
particularly [1] –
8:24
parties [6] – 4:7,
6:17, 6:18, 10:6,
10:13, 16:14
partners [1] – 7:7
PAUL [2] – 1:11, 2:15
pending [1] – 11:21
people [1] – 8:24
Perelman [2] – 2:8,
5:9
PERELMAN [1] – 1:9
period [1] – 3:11
permitted [1] – 19:6
PHILIP [1] – 1:10
Pivon [1] – 4:3
PIVEN [1] – 2:4
place [2] – 14:15,
15:2
plaintiff [3] – 3:26,
4:4, 8:15
Plaintiff [2] – 1:7, 2:4
plaintiff's [1] – 11:24
plaintiffs [10] – 6:10,
9:13, 9:20, 9:25,
12:24, 15:12, 18:3,
19:2, 19:6
plan [1] – 6:6
pleadings [1] – 9:18
point [5] – 3:16,
12:12, 12:17, 16:26,
17:4, 19:8
pointed [1] – 15:11
position [2] – 4:12,
4:13
possible [1] – 19:16
possibly [1] – 18:13
potatoes [1] – 11:9
potential [2] – 18:5,
18:20
powerful [5] – 6:10,
9:5, 10:10, 10:21,
12:20
prejudice [2] – 18:26,
19:4
preliminary [1] –
7:23
presented [3] – 7:16,
9:6, 10:26
price [1] – 7:18
principle [1] – 10:25
procedures [1] –
11:15
proceed [3] – 11:18,
12:13, 19:15
PROCEEDING [1] –
20:6

proceedings [1] –
19:21
produced [1] – 14:22
progress [1] – 16:5
promptly [1] – 14:9
proposal [2] – 6:19,
6:22, 7:12, 7:20
proposed [1] – 8:8
protected [2] – 8:11,
8:17
push [1] – 18:2
put [1] – 14:14

**Q**

questions [1] – 10:17
quickly [2] – 18:10,
19:15

**R**

race [2] – 5:19, 6:7
raise [2] – 4:6, 15:17
rather [1] – 16:7
ready [1] – 17:3
really [3] – 11:3,
11:10, 18:20
reason [2] – 13:9,
15:13
reasons [2] – 5:4,
6:10
recognized [1] –
12:18
relief [1] – 14:12
rendering [1] – 4:21
REPORTER [1] –
2:22
Reporter [1] – 20:9
represent [1] – 5:8
represented [3] –
6:24, 12:26, 19:2
representing [1] –
8:12
requests [3] – 6:17,
14:16, 16:3
resident [1] – 9:21
residents [1] – 9:14
results [1] – 11:16
retain [1] – 7:6
ride [1] – 12:15
RIFKIND [1] – 2:15
rightfully [1] – 15:25
risks [1] – 11:15
RONALDO [1] – 1:9
rule [7] – 5:12, 5:14,
6:2, 7:5, 16:6, 17:3
rules [3] – 5:11, 7:5
rulings [2] – 18:21,

18:23

**S**

scheduled [1] - 7:26
scheduling [3] -
7:21, 12:23, 14:13
Schwartz [2] - 2:8,
5:9
SCHWARTZ [1] -
1:11
second [2] - 9:5,
14:9
seconds [1] - 8:22
seek [1] - 3:16
seeking [2] - 3:21,
4:14
seeks [1] - 3:3
seem [1] - 15:17
Senior [1] - 20:9
September [1] - 1:19
served [4] - 14:16,
15:3, 15:4
set [1] - 7:25
sets [1] - 7:21
Seventh [1] - 2:13
several [2] - 3:21,
5:4
shall [1] - 19:17
shares [1] - 10:14
SHIRLEY [1] - 1:21
side [3] - 4:18, 13:6
sidebar [1] - 8:15
significantly [1] -
6:12
similar [2] - 4:6, 4:7
similarly [1] - 1:6
simultaneous [1] -
11:15
situated [1] - 1:6
six [1] - 5:16
SKADDEN [1] - 2:7
Skadden [1] - 5:8
SLATE [1] - 2:7
SLOVIN [1] - 1:12
Stovin [1] - 2:16
soon [1] - 14:8
sort [2] - 11:9, 16:17
special [3] - 6:24,
7:11, 7:15
standard [2] - 4:10,
6:3
start [3] - 5:13, 12:8,
19:7
started [2] - 18:9,
18:10
STATE [1] - 1:3
State [1] - 12:20
states [2] - 10:19,

17:22
statute [1] - 4:11
stay [2] - 3:22, 13:26
staying [1] - 16:7
STENOGRAPHIC [1]
- 20:6
STEPHEN [1] - 1:12
stipulated [1] - 15:7
Stock [5] - 7:5, 9:11,
16:13, 18:6, 18:17
Street [2] - 1:18, 2:8
Strine [2] - 7:20, 8:5
STROH [2] - 2:21,
20:9
strong [2] - 9:16,
11:11
strongest [1] - 11:4
structure [1] - 6:15
structured [1] - 7:25
submit [1] - 12:26
suggest [1] - 16:6
supposedly [1] - 7:2
SUPREME [1] - 1:3
surprisingly [1] -
16:20
sympathetic [1] -
8:23

**T**

TAKEN [1] - 20:6
Taub [1] - 2:16
TAUB [1] - 1:12
tee'd [2] - 8:26, 12:22
TERM [1] - 1:4
terms [2] - 5:14,
11:19
THE [27] - 1:3, 3:2,
3:21, 4:2, 4:9, 4:13,
4:17, 4:24, 4:26, 5:6,
5:13, 6:5, 7:2, 8:19,
8:21, 9:7, 9:23, 10:4,
11:3, 11:26, 12:3,
13:5, 13:16, 13:19,
14:5, 16:16, 20:6
THEO [1] - 1:11
third [1] - 6:17
THIS [1] - 20:6
THOMAS [1] - 2:10
tickets [1] - 13:3
timely [2] - 7:26,
14:4
TO [1] - 20:5
TODD [1] - 2:14
together [1] - 8:24
Tom [1] - 5:7
tracks [1] - 15:18
traded [2] - 9:11,
17:11

train [2] - 12:15, 13:3
transaction [3] -
6:22, 7:14, 7:17, 7:19,
8:3, 10:2, 12:8, 12:12
TRANSCRIPT [1] -
20:5
tremendous [6] -
9:15, 10:5, 17:15,
17:23, 18:5, 18:20
tremendously [1] -
17:26
TRIAL [1] - 1:4
trivialize [1] - 13:2
TRUE [1] - 20:5
turn [2] - 5:25, 6:8
twice [2] - 15:20,
16:10
two [12] - 3:8, 3:16,
4:5, 5:20, 6:4, 8:10,
9:20, 11:14, 14:12,
15:18, 17:25, 18:25

**U**

ultimately [1] - 7:15
under [2] - 4:11, 7:4
uniquely [1] - 10:20
up [4] - 7:25, 8:26,
12:14, 12:22
utility [1] - 6:2

**V**

various [1] - 7:22
verdicts [2] - 18:5,
18:13
VIET [1] - 1:11

**W**

waste [1] - 15:23
wasting [1] - 16:10
Webb [1] - 2:12
WEBB [1] - 1:12
week [6] - 3:11, 3:13,
7:13, 14:19, 14:24
weekend [1] - 7:17
weeks [1] - 7:9
WEISS [1] - 2:15
WERNER [1] - 1:21
WHARTON [1] - 2:15
WILLIAM [1] - 1:10
WILLKIE [1] - 2:11
Willkie [2] - 6:25, 7:6
Wilmington [3] - 2:9,
12:16, 13:3
witnesses [5] - 9:12,
9:23, 11:20, 12:10,

17:13
works [1] - 11:17
WORLDWIDE [1] -
1:9
Worldwide [3] -
2:16, 6:26, 7:16
worthwhile [1] - 6:21
WRIGHT [1] - 1:6

**Y**

year [3] - 3:11, 8:2,
8:4
yesterday [1] - 8:9
YORK [2] - 1:3, 1:4
York [41] - 1:18, 2:5,
2:13, 2:17, 3:8, 3:16,
3:22, 4:9, 4:11, 5:11,
7:5, 9:10, 9:11, 9:13,
9:15, 9:21, 9:25, 10:5,
10:25, 11:7, 11:26,
12:6, 14:17, 14:19,
16:4, 16:13, 16:14,
16:19, 16:23, 17:10,
17:12, 17:13, 17:22,
17:24, 18:6, 18:16