# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IN RE:

MEDCO/EXPRESS SCRIPTS MERGER
LITIGATION

Civil Action No. 11-4211 (DMC) (MF)

**ORAL ARGUMENT REQUESTED**

**HEARING DATE:  APRIL 16, 2012**

## EXPRESS SCRIPTS' OPPOSITION TO PLAINTIFFS' FEE APPLICATION

Robert J. Del Tufo
Andrew Muscato
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
4 Times Square
New York, NY  10036-6522
Tel.: (212) 735-3000
Fax: (212) 735-2000
Robert.DelTufo@skadden.com
Andrew.Muscato@skadden.com

Joseph P. LaSala
MCELROY, DEUTSCH, MULVANEY &
    CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ  07962-2075
Tel.: (973) 993-8100
Fax: (973) 425-0161
Jlasala@mdmc-law.com

*Attorneys for Defendants Express Scripts,*
*Inc., Aristotle Holding, Inc., Aristotle Merger*
*Sub, Inc. and Plato Merger Sub, Inc.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND ........................................................................................................... 3

    A.    A Merger Is Announced, And A Multi-Jurisdictional Fight Ensues ...................... 3

    B.    Plaintiffs Quickly Settle For Therapeutic Benefits Before Litigating The Merits. .................................................................................................................. 4

ARGUMENT ................................................................................................................. 5

I.    APPLICABLE LAW. ............................................................................................ 5

II.    THE AMERICAN RULE AND THE CORPORATE BENEFIT DOCTRINE. ............. 6

III.    THE *SUGARLAND* FACTORS. ....................................................................... 7

    A.    The Value Of The Benefit. ................................................................................. 8

        1.    Therapeutic benefits are not tantamount to monetary recovery. ................. 8

        2.    The therapeutic benefits here provided only limited benefit under applicable Delaware authority. ................................................................. 10

        3.    *In re Compellent Technologies, Inc.* is not to the contrary. ..................... 13

        4.    Plaintiffs' application of *In re Compellent Technologies, Inc.* is flawed. .................................................................................................... 15

    B.    Difficulty Or Complexity Of The Litigation And Its Contingent Nature. ........... 18

    C.    Stage At Which The Litigation Ended. ............................................................... 19

    D.    Time And Effort Of Plaintiffs' Counsel – The "Lodestar." ................................. 20

        1.    Plaintiffs' hours were not reasonable ........................................................ 20

            (a)    Twenty-six different law firms fight over who will control the litigation, and where it will proceed. ...................................... 21

            (b)    170 different timekeepers needlessly duplicate the same tasks. ................................................................................... 23

        2.    The only evidence presented on hourly rates is $550 per hour. ................. 28

        3.    No lodestar multiplier is warranted here. ................................................. 30

CONCLUSION ............................................................................................................ 30

## TABLE OF CASES AND AUTHORITIES

**CASES**                                                                                                    **PAGE(S)**

*In re Abercrombie & Fitch Co. S'holders Derivative Litig.*,
    886 A.2d 1271 (Del. 2005) .......................................................................... 7

*Abrams v. Lightolier Inc.*,
    50 F.3d 1204 (3d Cir. 1995) ....................................................................... 5

*In re "Agent Orange" Prod. Liab. Litig.*,
    818 F.2d 226 (2d Cir. 1987) ..................................................................... 27

*Alaska Elec. Pension Fund v. Brown*,
    988 A.2d 412 (Del. 2010) .......................................................................... 7

*In re Allion Healthcare, Inc. S'holders Litig.*,
    C.A. No. 5022-CC, Trans. (Del. Ch. Jan. 19, 2011) ............................... 11

*In re Am. Real Estate Partners*,
    C.A. No. 13687, 1997 WL 770718 (Del. Ch. Dec. 3, 1997) ..................... 8

*In re BEA Sys., Inc. S'holders Litig.*,
    C.A. No. 3298-VCL, 2009 WL 1931641 (Del. Ch. June 24, 2009) ........ 27

*Blakey v. Cont'l Airlines, Inc.*,
    2 F. Supp. 2d 598 (D.N.J. 1998) ............................................................. 20

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ................................................................................... 9

*Briggs v. Hartford Fin. Servs. Grp., Inc.*,
    No. 07-cv-5190, 2009 WL 2370061 (E.D. Pa. July 31, 2009) ................. 9

*Brinckerhoff v. Tex. E. Prods. Pipeline Co.*,
    986 A.2d 370 (Del. Ch. 2010) ................................................................. 25

*In re Burger King Holdings, Inc. S'holder Litig.*,
    C.A. No. 5808-VCL, Trans. (Del. Ch. Jan. 19, 2011) ............................ 11

*In re Burlington N. Santa Fe S'holder Litig.*,
    C.A. No. 5043-VCL, Trans. (Del. Ch. Oct. 28, 2010) ............................ 19

*Casper v. SMG*,
    389 F. Supp. 2d 618 (D.N.J. 2005) ......................................................... 16

*In re Celera Corp. S'holder Litig.*,
  C.A. No. 6304-VCP (Del. Ch. Mar. 23, 2012) ....................................... 12, 15, 16

*In re Cendant Corp. Derivative Action Litig.*,
  232 F. Supp. 2d 327 (D.N.J. 2002) ...................................................................... 9

*Cityside Archives, Ltd. v. N.Y.C. Health & Hosp. Corp.*,
  37 F. Supp. 2d 652 (D.N.J. 1999) ................................................................. 23, 28

*Compass Bank v. Veytia*,
  No. EP-11-CV-228-PRM, 2012 WL 627756 (W.D. Tex. Feb. 24, 2012) ........................... 26

*In re Compellent Techs., Inc. S'holder Litig.*,
  C.A. No. 6084-VCL, 2011 WL 6382523 (Del. Ch. Dec. 9, 2011) ................................ passim

*In re Computron Software, Inc.*,
  6 F. Supp. 2d 313 (D.N.J. 1998) .......................................................................... 9

*Conklin v. Pressler & Pressler LLP*,
  No. 10-3566, 2012 WL 569384 (D.N.J. Feb. 21, 2012) ................................................ 28, 29

*In re Cox Commc'ns, Inc. S'holders Litig.*,
  879 A.2d 604 (Del. 2005) .................................................................................. 17

*In re Cox Radio, Inc. S'holders Litig.*,
  C.A. No. 4461-VCP, 2010 WL 1806616 (Del. Ch. May 6, 2010),
  *aff'd*, 9 A.3d 475 (Del. 2010) .......................................................................... 24

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000) ............................................................................ 9

*Dagron v. Perelman*,
  C.A. No. 15101, Trans. (Del. Ch. Aug. 29, 1997) ...................................................... 29

*DeGrado v. Jefferson Pilot Fin. Ins. Co.*,
  No. 02-cv-01533-WYD-BNB, 2009 WL 1973501 (D. Colo. July 6, 2009) ........................ 24

*Dewey v. Volkswagen of Am.*,
  728 F. Supp. 2d 546 (D.N.J. 2010) ................................................................. 8, 9, 20, 24

*In re Diamond Shamrock Corp.*,
  C.A. No. 8798, 1989 WL 17424 (Del. Ch. Feb. 23, 1989) ....................................... 24, 26, 27

*In re Diet Drugs*,
  582 F.3d 524 (3d Cir. 2009) ............................................................................... 9

iii

*In re Digex, Inc. S'holder Litig.*,
    C.A. No. 18336, Trans. (Del. Ch. Apr. 6, 2001) .................................................. 29

*In re DirecTV Grp., Inc. S'holder Litig.*,
    C.A. No. 4581-VCP (Del. Ch. Nov. 30, 2009) ...................................................... 11

*Duva v. GLG Partners, Inc.*,
    C.A. No. 5512-VCS, Trans. (Del. Ch. Jan. 24, 2011) .......................................... 10

*Eisenberg v. Chi. Milwaukee Corp.*,
    C.A. No. 9374, 1988 WL 112910 (Del. Ch. Oct. 25, 1988),
    *aff'd*, 560 A.2d 489 (Del. 1989) .......................................................................... 12

*In re Elec. Data Sys. Class Action Litig.*,
    No. 366-01078-2008 (Tex. Dist. Ct. Collin Cnty. Dec. 23, 2008) ........................ 12

*Erie R.R. Co. v. Tompkins*,
    304 U.S. 64 (1938) ........................................................................................ 5, 19

*In re Fine Paper Antitrust Litig.*,
    751 F.2d 562 (3d Cir. 1984) ....................................................................... 21, 23, 30

*Finkel v. Am. Oil & Gas, Inc.*,
    No. 10-cv-01808-CMA-MEH, 2012 WL 171038 (D. Colo. Jan. 20, 2012) ............. 21, 22, 23

*First State Orthopaedics v. Concentra, Inc.*,
    534 F. Supp. 2d 500 (E.D. Pa. 2007) .................................................................. 10

*Franklin Balance Sheet Inv. Fund v. Crowley*,
    C.A. No. 888-VCP, 2007 WL 2495018 (Del. Ch. Aug. 30, 2007) ........................ 29

*In re Genta Sec. Litig.*,
    No. 04-cv-2123, 2008 WL 2229843 (D.N.J. May 28, 2008) .................................. 9

*Gober v. Cooper*,
    C.A. No. 4276-CC, Trans. (Del. Ch. Nov. 23, 2009) .......................................... 10

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ............................................................................................ 25

*In re Ins. Brokerage Antitrust Litig.*,
    MDL No. 1663, No. 04-5184 (GEB), 2009 WL 411856 (D.N.J. Feb. 17, 2009) ............. 9, 10

*In re Instinet Grp., Inc. S'holders Litig.*,
    C.A. No. 1289-N, 2005 WL 3501708 (Del. Ch. Dec. 14, 2005) ........................... 19

*In re Int'l Coal Grp., Inc. S'holders Litig.*
    C.A. No. 6464-VCP, Trans. (Del. Ch. Jan. 30, 2012) ................................................ 13, 18

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
    426 F.3d 694 (3d Cir. 2005) ................................................................................. 28

*In re J. Crew Grp., Inc. S'holders Litig.*,
    C.A. No. 6043-CS, Trans. (Del. Ch. Dec. 14, 2011) ........................................ 13, 14

*Joy Mfg. Corp. v. Pullman-Peabody Co.*,
    742 F. Supp. 911 (W.D. Pa. 1990),
    *aff'd*, 932 F.2d 96 (3d Cir. 1991) ................................................................ 25, 30

*In re Katy Indus. Inc., S'holders Litig.*,
    C.A. No. 12612, 1994 WL 444765 (Del. Ch. Aug. 11, 1994) ............................... 6

*Korn v. New Castle Cnty.*,
    C.A. No. 767-CC, 2007 WL 2981939 (Del. Ch. Oct. 3, 2007) ........................... 7

*La. Mun. Police Emps.' Ret. Sys. v. Crawford*,
    C.A. No. 2653-CC, Trans. (Del. Ch. June 8, 2007) ........................................ 29

*La. Mun. Police Emps.' Ret. Sys. v. Sealed Air Corp.*,
    No. 03-CV-4372 (DMC), 2009 WL 4730185 (D.N.J. Dec. 4, 2009) ................... 16

*In re LaBarge Inc. S'holder Litig.*,
    C.A. No. 6368-VCN, Trans. (Del. Ch. Jan. 3, 2012) ........................................ 29

*Larson v. Sprint Nextel Corp.*,
    No. 07-cv-5325, 2010 WL 234934 (D.N.J. Jan. 15, 2010) ............................... 9

*In re LG/Zenith Rear Projection Television Class Action Litig.*,
    No. 06-5609 (JLL), 2009 WL 455513 (D.N.J. Feb. 18, 2009) ........................... 9

*Mathis v. Exxon Corp.*,
    302 F.3d 448 (5th Cir. 2002) ................................................................................. 6

*In re Medco Health Solutions, Inc. S'holders Litig.*,
    C.A. No. 6720-CS (Del. Ch. Aug. 23, 2011) ................................................... 22

*In re Mediacom Commc'ns Corp.*,
    C.A. No. 5537-VCS, Trans. (Del. Ch. June 6, 2011) ........................................ 8

*In re Mercedes-Benz Tele Aid Contract Litig.*,
    MDL No. 1914, 07-cv-2720, 2011 WL 4020862 (D.N.J. Sept. 9, 2011) ............... 9

*Merola v. Atl. Richfield Co.*,
   515 F.2d 165 (3d Cir. 1975)............................................................. 10

*Minard v. Warbug Pincus Private Equity IX, LP*,
   C.A. No. 4894-VCS, Trans. (Del. Ch. May 26, 2010)........................... 8

*Minneapolis Firefighters' Relief Ass'n v. Amore*,
   C.A. No. 6175-VCN, Trans. (Del. Ch. July 25, 2011)......................... 12

*Minneapolis Firefighters' Relief Ass'n v. Ceridian Corp.*,
   C.A. No. 2996-CC, Trans. (Del. Ch. Feb. 25, 2008) .................... 11, 12

*Minneapolis Firefighters' Relief Ass'n v. Ceridian Corp.*,
   C.A. No. 2996-CC (Del. Ch. Mar. 24, 2008)............................... 11, 12

*In re Monogram Biosciences, Inc. S'holders Litig.*,
   C.A. No. 4703-CC, Trans. (Del. Ch. Jan. 26, 2010) ........................... 11

*In re MONY Grp. Inc' S'holders Litig.*,
   C.A. No. 20554-NC (Del. Ch. Oct. 2, 2004) ...................................... 12

*In re Nat'l City Corp. S'holders Litig.*,
   C.A. No. 4123-CC, 2009 WL 2425389 (Del. Ch. July 31, 2009),
   *aff'd*, 998 A.2d 851 (Del. 2010) ......................................................... 8

*In re NCS Healthcare, Inc. S'holders Litig.*,
   C.A. No. 19786, 2003 WL 21384633 (Del. Ch. May 28, 2003)............ 29

*Off v. Ross*,
   C.A. No. 3468-VCP, 2009 WL 4725978 (Del. Ch. Dec. 10, 2009) ............... 23, 29

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
   478 U.S. 546 (1986).................................................................. 20, 30

*Perdue v. Kenny A. ex rel. Winn*,
   130 S. Ct. 1662 (2010) ................................................................ 6, 30

*Phelps Dodge Corp. v. Cyprus Amax Minerals Co.*,
   C.A. No. 17398, 1999 WL 1054255 (Del. Ch. Sept. 27, 1999)............ 13

*Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty.*,
   No. 02:06-cv-1064, 2012 WL 604156 (W.D. Pa. Feb. 24, 2012)......... 28

*Plumbers Union Local No. 12, Pension Fund v. Ambassadors Grp. Inc.*,
   No. CV-09-0214-JLQ (E.D. Wash. Nov. 10, 2011) ........................... 28

*Plumbers Union Local No. 12, Pension Fund v. Ambassadors Grp. Inc.*,
No. CV-09-0214-JLQ (E.D. Wash. Nov. 23, 2011) ............................................................ 25

*Plumbers Union Local No. 12, Pension Fund v. Ambassadors Grp. Inc.*,
No. CV-09-0214-JLQ, Trans. (E.D. Wash. Nov. 30, 2011) ..................................... 24, 25, 26

*Plumbers Union Local No. 12, Pension Fund v. Ambassadors Grp. Inc.*,
No. CV-09-0214-JLQ (E.D. Wash. Dec. 7, 2011) ............................................................ 24

*Plymouth Cnty. Contributory Ret. Sys. v. Hassan*,
No. 08-1022 (DMC)(JAD), 2012 WL 664827 (D.N.J. Feb. 28, 2012) ................................. 20

*Polonski v. Trump Taj Mahal Assocs.*,
137 F.3d 139 (3d Cir. 1998) .......................................................................................... 10

*In re QVC, Inc.*,
C.A. No. 13590-NC, 1997 WL 67839 (Del. Ch. Feb. 5, 1997) ...................................... 23, 24

*In re RehabCare Grp., Inc. S'holders Litig.*,
C.A. No. 6197-VCL, Trans. (Del. Ch. Sept. 8, 2011)........................................................ 15

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ............................................................................... 9

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)........................................................................................... 9

*Rosan v. Chi. Milwaukee Corp.*,
C.A. No. 10526, 1994 WL 30524 (Del. Ch. Jan. 19, 1994)................................................. 6

*In re Safety Components Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001) ................................................................................... 9

*Sanders v. Wang*,
C.A. No. 16640, 2001 WL 1131353 (Del. Ch. Sept. 18, 2001)........................................... 6

*In re Schering-Plough/Merck Merger Litig.*,
No. 09-CV-1099 (DMC), 2010 WL 1257722 (D.N.J. 2010)................................... 11, 20, 28

*In re Schering-Plough/Merck Merger Litig.*,
No. 09-CV-1099 (DMC), Trans. (D.N.J. Mar. 24, 2010) .................................................... 17

*Seinfeld v. Coker*,
847 A.2d 330 (Del. Ch. 2000) ..................................................................................... 7, 8

*Serrano v. Sterling Testing Sys., Inc.*,
   711 F. Supp. 2d 402 (E.D. Pa. 2010) ..................................................................... 9

*Siegman v. Palomar Med. Techs. Inc.*,
   C.A. No. 15894, 1998 WL 409352 (Del. Ch. July 13, 1998) ................................. 23

*Smith v. ServiceMaster Co.*,
   C.A. No. 2924-VCS, Trans. (Del. Ch. Sept. 29, 2008)............................. 10, 11, 26

*In re Smurfit-Stone Container Corp. S'holder Litig.*,
   C.A. No. 6164-VCP, 2011 WL 2028076 (Del. Ch. May 20, revised May 24, 2011)........... 13

*State of Wis. Inv. Bd. v. Bartlett*,
   C.A. No. 17727, 2002 WL 568417 (Del. Ch. Apr. 9, 2002),
   *aff'd*, 808 A.2d 1205 (Del. 2002) .................................................... 2, 12, 14, 18, 23

*Sugarland Indus. Inc. v. Thomas*,
   420 A.2d 142 (Del. 1980) ......................................................................................... 7

*Tandycrafts, Inc. v. Initio Partners*,
   562 A.2d 1162 (Del. 1989) ................................................................................. 6, 12

*In re Toys "R" Us, Inc. S'holder Litig.*,
   877 A.2d 975 (Del. Ch. 2005)............................................................................ 12, 17

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D. Del. 2002)................................................................................. 9

*Washington v. Phila. Cnty. Ct. Com. Pl.*,
   89 F.3d 1031 (3d Cir. 1996).................................................................................... 30

*Weber v. Gov't Emps. Ins. Co.*,
   262 F.R.D. 431 (D.N.J. 2009).................................................................................. 30

*In re William Wrigley Jr. Co. S'holders Litig.*,
   C.A. No. 3750-VCL, 2009 WL 154380 (Del. Ch. Jan. 22, 2009) ............................ 2, 10, 16

## OTHER AUTHORITIES

Del. Supr. Ct. R. 41(a)(ii)........................................................................................... 15

L. Civ. R. 54.2(a) ........................................................................................................ 25

Defendants Express Scripts, Inc., Aristotle Holding, Inc., Aristotle Merger Sub, Inc. and Plato Merger Sub, Inc. (collectively, "Express Scripts") respectfully submit this memorandum of law in opposition to Plaintiff's Motion for an Award of Attorneys' Fees and Expenses (the "Fee Application").

## PRELIMINARY STATEMENT

Plaintiffs' counsel seeks an unprecedented fee award of $18 million for a settlement that resulted in ***no monetary recovery for the class***.  Plaintiffs' efforts to convince this Court that a reduction in a termination fee and additional disclosures somehow concretely benefited Medco stockholders by hundreds of millions of dollars are unreasonable and inconsistent with Third Circuit and Delaware law.  Only a Harvard law professor like Plaintiffs' expert could envision a world in which zero dollars of additional consideration to stockholders is somehow worth $350,000,000.

As every party must admit, the Settlement was based solely on the same corporate therapeutics that frequently form the basis for a settlement in deal litigation, and conferred no actual monetary benefit on the class.  No other bidder emerged with a higher, better offer as a result of these deal modifications, and Medco Health Solutions Inc.'s ("Medco") stockholders did not receive a single penny of additional merger consideration.  Instead, approximately one month after the parties settled, Medco's stockholders voted overwhelmingly in favor of the Merger, and received the same merger consideration that they would have received prior to the commencement of this litigation.  While Express Scripts does not dispute that the terms of the Settlement provided benefits to Medco shareholders, those benefits cannot support a windfall $18 million attorneys' fee award.  Indeed, as explained in the expert report of Kevin Dages, no settlement involving a reduction in a termination fee in a deal this size has resulted in either an increase in the merger price, or an increased price by another bidder.  These realities cannot be

ignored when fixing a fee award for therapeutic benefits.  *State of Wis. Inv. Bd. v. Bartlett*, C.A. No. 17727, 2002 WL 568417 (Del. Ch. Apr. 9, 2002), *aff'd*, 808 A.2d 1205 (Del. 2002).

Nevertheless, Plaintiffs' counsel asks the Court to disregard these indisputable facts, ignore well-settled law governing attorneys' fees for non-monetary settlements, and provide them with a huge fee award under an impermissible patchwork theory of federal and state law.

Delaware law on fee awards in therapeutic benefit cases makes clear that a fee award here must be a fraction of the $18 million request.  *See In re William Wrigley Jr. Co. S'holders Litig.*, C.A. No. 3750-VCL, 2009 WL 154380, at *1 (Del. Ch. Jan. 22, 2009).  Plaintiffs' reliance on a Delaware case, *In re Compellent Technologies, Inc. Shareholder Litigation*, C.A. No. 6084-VCL, 2011 WL 6382523 (Del. Ch. Dec. 9, 2011), is not to the contrary despite the imaginative math of their academic expert.

As even their own flawed lodestar calculation demonstrates, an $18 million fee award cannot be supported under the law.  Plaintiffs' lodestar calculation of $3.1 million improperly includes the duplicative work of **twenty-six law firms and 170 timekeepers**.  When Plaintiffs' jurisdictional wrangling is set aside, their work on the merits of this action consisted of responding to one motion to dismiss, filing (but not pressing) a preliminary injunction, reviewing a limited document production and taking two depositions **after** settlement was reached.  After eliminating the non-compensable excess, a proper lodestar calculation results in a drastically lower fee award.

In sum, under either Delaware or federal law, Plaintiffs' request for $18 million of fees is unreasonable and unsupported.  Plaintiffs' fee request should be rejected, and, for the reasons explained below, Plaintiffs should be awarded attorneys' fees of no more than $700,000.

## BACKGROUND

### A.  A Merger Is Announced, And A Multi-Jurisdictional Fight Ensues.

On July 21, 2011, Medco and Express Scripts announced that they had reached a definitive merger agreement through which the companies would be combined in a merger transaction valued at approximately $29.1 billion (the "Merger"), wherein Medco shareholders would receive $28.80 in cash and 0.81 Express Scripts shares per Medco share, valuing Medco at a 28% premium price of $71.36 per share as of the announcement.  (Am. Compl. ¶ 6.)  In keeping with the recent trend of multi-forum litigation following the announcement of any large transaction, a flurry of *twenty-one* nearly identical complaints were filed in this Court, the Delaware Court of Chancery, and New Jersey state court.

In its haste to get ahead of the other plaintiffs and win the forum battle, Plaintiff Louisiana Municipal Police Employees' Retirement System (together with remaining plaintiffs, "Plaintiffs") filed a jurisdictionally-defective complaint in this Court shortly ***after*** the first of ten actions was filed in the Delaware Court of Chancery challenging the Merger.  Plaintiffs quickly attempted to cure their jurisdictionally-defective complaint by filing an amended complaint (the "Amended Complaint") that added a generic and unsupported allegation that they met the amount in controversy requirement of 28 U.S.C. § 1332(a).

Defendants immediately moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. No. 12.)  Additionally, Defendants moved to stay the Federal Action in deference to the Delaware Action based on principles of comity and abstention.  (Dkt. No. 13.)  On September 19, 2011, the Court denied all of Defendants' pending motions.  (Dkt. Nos. 52, 53.)  On October 25, 2011, the Court certified its Opinion and Order of September 19, 2011 for appeal to the Third Circuit.  (Dkt. No. 85.)  The Third Circuit ordered expedited briefing on the interlocutory appeal.  Although settlement mooted the need for further

briefing, the Third Circuit has retained jurisdiction of the potential appeal during the pendency of settlement proceedings, and has requested regular updates regarding the status of the case.

Meanwhile, in Delaware, ten sets of plaintiffs scrambled for control of the litigation. Multiple motions for lead counsel appointment were filed, and three hearings and office conferences with the Chancellor were necessary to organize the competing factions and resolve issues related to identical litigation in multiple forums. On August 23, 2011, over a month after the first complaints were filed, the Court of Chancery certified a class of Medco shareholders and appointed a leadership structure consisting of two Co-Lead Counsel, a Delaware Liaison Counsel, and an Executive Committee. Shortly thereafter, an Amended Complaint was filed containing disclosure claims, which were never asserted before this Court.

In sum, *twenty-six* different plaintiffs' firms, ***116 individual plaintiffs' attorneys*** and over fifty litigation support personnel joined the fight over who would control the litigation resulting from one of the biggest M&A transactions of 2011 – and command any attorneys' fees flowing from a settlement.

**B.     Plaintiffs Quickly Settle For Therapeutic Benefits Before Litigating The Merits.**

On October 11, 2011, this Court denied Plaintiffs' motion for expedited discovery (Dkt. No. 75), and Plaintiffs filed a Motion for Preliminary Injunction on October 28, 2011 (Dkt. No. 87). No briefing or discovery on the Motion for Preliminary Injunction was ever conducted, however, because the parties reached agreement to settle the litigation shortly after the Third Circuit ordered expedited briefing. The parties' agreement was memorialized in a Memorandum of Understanding dated November 7, 2011 (the "MOU"), which provided for additional disclosures, a reduction in the termination fee, and alteration of Express Scripts' matching rights. No money was provided to the Class as part of the settlement.

Following the execution of the MOU, the parties engaged in confirmatory discovery, including limited document production and two depositions.  On November 25, 2011, Plaintiffs filed a Motion to Certify Class and for Preliminary Approval of Settlement (Dkt. No. 94), which attached a Stipulation of Settlement (the "Settlement") and proposed notice and orders.  On December 21, 2011, Medco and Express Scripts stockholders voted overwhelmingly in favor of the Merger.  In the period between the execution of the MOU and the shareholder vote, no competing bidders emerged.

The parties were unable to agree to an appropriate award of attorneys' fees, however, as Plaintiffs requested an exorbitant amount of fees in exchange for modest therapeutic benefits. On November 28, 2011, Plaintiffs wrote the Court requesting that the Court amend the approved notice to include Plaintiffs' intent to request a fee award of $18 million – an unprecedented amount in a case involving a non-monetary settlement of deal litigation.  (Dkt. No. 95.)  On March 2, 2012, Plaintiffs filed their Fee Application, which set out the incorrect legal standard for assessing their exorbitant and unreasonable fee request.

## ARGUMENT

### I.     APPLICABLE LAW.

Generally in diversity cases such as this one, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), requires that a request for attorneys' fees be controlled by state law.  *Abrams v. Lightolier Inc.*, 50 F.3d 1204 (3d Cir. 1995) (finding district court erred in applying federal law on attorneys' fees, explaining that *Erie* required court to apply New Jersey fee law where New Jersey substantive law governed state law claims).  "A fee award is governed by the same law that serves as the rule of decision for the substantive issues in the case. . . .  State law controls

5

both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461-62 (5th Cir. 2002) (citations omitted).[1]

## II.    THE AMERICAN RULE AND THE CORPORATE BENEFIT DOCTRINE.

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses. . . ." *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1671 (2010). *See also Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164 (Del. 1989) (when assessing fees, the "starting principle is recognition of the so-called American Rule"). Delaware law's corporate benefit doctrine is a rare exception to this rule. *Tandycrafts*, 562 A.2d at 1164.

Under the corporate benefit doctrine, when "'a defendant corporation takes steps to settle or moot a case and in so doing produces the same or similar benefit sought by the shareholder's litigation,'" the court may, in its discretion, award fees. *Rosan v. Chi. Milwaukee Corp.*, C.A. No. 10526, 1994 WL 30524, at *1 (Del. Ch. Jan. 19, 1994) (quoting *Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 878 (Del. 1980)). The Court also has discretion to award no fee. *See, e.g.*, *In re Katy Indus., Inc., S'holders Litig.*, C.A. No. 12612, 1994 WL 444765, at *4-5 (Del. Ch. Aug. 11, 1994). "'An attorney fee is not a pot of nectar available to any attorney who represents any shareholder.'" *Sanders v. Wang*, C.A. No. 16640, 2001 WL 1131353, at *3 (Del. Ch. Sept. 18, 2001) (quoting *In re Resorts Int'l S'holders Litig.*, C.A. Nos. 9470-9605, Mem. Op. at 4 (Del. Ch. Oct. 11, 1990)). In order to be entitled to an award of fees:

> an applicant must show, as a preliminary matter, that: (i) the suit was meritorious when filed; (ii) the action producing benefit to the corporation was taken by the

---

[1] All parties concede that Delaware law governs the claims at issue in the litigation, and the Settlement contains a choice of law provision designating Delaware law. (Dkt. No. 94, Stipulation and Agreement of Compromise, Settlement and Release ¶ 32.)

defendants before a judicial resolution was achieved; and (iii) the resulting corporate benefit was causally related to the lawsuit.[2]

*Alaska Elec. Pension Fund v. Brown*, 988 A.2d 412, 417 (Del. 2010).

## III.    THE *SUGARLAND* FACTORS.

In fashioning a fee award, Delaware law requires a court, in its discretion, to consider the totality of the circumstances, and award an amount that appropriately compensates plaintiffs' counsel for the results they actually achieved.  *See Korn v. New Castle Cnty.*, C.A. No. 767-CC, 2007 WL 2981939, at *2 (Del. Ch. Oct. 3, 2007) (a fee award should avoid "socially unwholesome windfalls"); *Seinfeld v. Coker*, 847 A.2d 330, 334 (Del. Ch. 2000) (explaining that a fee award above a level necessary to produce meritorious suits is merely "a windfall, serving no other purpose than to siphon money away from stockholders and into the hands of their agents").

*Sugarland Industries Inc. v. Thomas* provides a list of factors to be used in accessing the reasonableness of a fee award under Delaware law.  420 A.2d 142 (Del. 1980).  Those factors include:  (1) the size of the benefit conferred; (2) the difficulty and complexity of the litigation; (3) the contingent nature of the fee; (4) the stage at which the litigation ended; (5) counsel's standing and ability;[3] and (6) the time and effort expended by counsel.  *See, e.g.*, *In re Abercrombie & Fitch Co. S'holders Derivative Litig.*, 886 A.2d 1271, 1273 (Del. 2005) (citing *Sugarland*, 420 A.2d at 142).  As discussed below, *Sugarland* – a case Plaintiffs ***fail even to cite*** – does not support Plaintiffs' request for $18 million in attorneys' fees, plus expenses.

---

[2] Express Scripts does not dispute that a benefit was conferred by the Settlement, prior to a judicial resolution, as a result of the lawsuit.  That benefit however, as discussed below, was modest.

[3]  Express Scripts does not contest the standing and ability of Plaintiffs' counsel.

**A.      The Value Of The Benefit.**

The most important and heavily weighted factor in determining a fee award is the

magnitude of the benefit achieved.  *Seinfeld*, 847 A.2d at 336 ("*Sugarland's* first factor is indeed

its most important – the results accomplished for the benefit of the shareholders.").  Plaintiffs

bear the burden of establishing the value of the claimed benefit.  *See In re Am. Real Estate

Partners*, C.A. No. 13687, 1997 WL 770718, at *6 (Del. Ch. Dec. 3, 1997).

**1.      Therapeutic benefits are not tantamount to monetary recovery.**

Under Delaware law, therapeutic benefits are not treated on an equal footing with

monetary recoveries.  *In re Nat'l City Corp. S'holders Litig.*, C.A. No. 4123-CC, 2009 WL

2425389, at *4 (Del. Ch. July 31, 2009) (finding plaintiff's fee excessive because the class

benefit was "non-monetary, therapeutic and modest"), *aff'd*, 998 A.2d 851 (Del. 2010); *Minard v.

Warbug Pincus Private Equity IX, LP*, C.A. No. 4894-VCS, Trans. at 20 (Del. Ch. May 26, 2010)

("to the extent that this Court has awarded . . . very, very big fees . . . those very, very big fee

awards are reserved where they should be, which is when there is a genuinely large economic

benefit produced by litigants on behalf of the class"); *In re Mediacom Commc'ns Corp.*, C.A. No.

5537-VCS, Trans. at 13-14 (Del. Ch. June 6, 2011) ("People don't invest in equities typically

for . . . therapeutic healing.  They invest to make money.").

For this same reason, Plaintiffs are wrong that a federal law percentage of recovery

theory should apply here.  Not only does Delaware law control the Fee Application, but

percentage of the recovery is primarily used where plaintiffs have actually recovered a common

monetary fund for the benefit of the class.  *See Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d

546, 590 (D.N.J. 2010) (*cited* by Plaintiffs).[4]  As its name implies, a percentage of the recovery

requires "a lawyer . . . recover[ing] a *common fund* for the benefit of persons other than . . . his

client." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (emphasis added).  Plaintiffs

secured no monetary recovery here, and they fail to cite a single instance in which a federal court

applied percentage of the recovery to determine the reasonableness of a fee award in a settlement

of alleged fiduciary duty claims supported by therapeutic benefits.  The two cases Plaintiffs cite

to support their percentage of the recovery argument involved products liability claims and are

inapposite.  (Pl. Br. at 25-26.)  In *Dewey*, a products liability case, settlement resulted in, among

other things, an $8 million fund for class members and a commitment to repair the automobiles

of the injured class members.  *Dewey*, 728 F. Supp. 2d at 586.  The *Dewey* court measured the

cost of labor necessary to make the promised repairs.  *Id.* at 597-98.  In *In re LG/Zenith Rear*

*Projection Television Class Action Litigation*, another products liability case, the settlement

provided replacement devices, warranty extensions, and repair services the court could measure.

No. 06-5609 (JLL), 2009 WL 455513, at *8 (D.N.J. Feb. 18, 2009).[5]  Here, no monetary

---

[4] *Dewey* is currently under review by the Third Circuit Court of Appeals.  For a further discussion of *Dewey*'s application here, see *infra* note 16.

[5] Plaintiffs' remaining authority proves the inapplicability of a percentage of recovery method.  *Larson v. Sprint Nextel Corp.*, No. 07-cv-5325, 2010 WL 234934, at *23 (D.N.J. Jan. 15, 2010) (awarding percentage of recovery where class received cash recovery); *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402 (E.D. Pa. 2010) (same); *Briggs v. Hartford Fin. Servs. Grp., Inc.*, No. 07-cv-5190, 2009 WL 2370061, at *14 (E.D. Pa. July 31, 2009) (same); *In re Genta Sec. Litig.*, No. 04-cv-2123, 2008 WL 2229843 (D.N.J. May 28, 2008) (same); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) (same); *In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009) (same); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002) (same); *In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d 327 (D.N.J. 2002) (same); *In re Safety Components Sec. Litig.*, 166 F. Supp. 2d 72 (D.N.J. 2001) (same); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) (same); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 147 (E.D. Pa. 2000) (same); *In re Computron Software, Inc.*, 6 F. Supp. 2d 313 (D.N.J. 1998) (same); *see also In re Mercedes-Benz Tele Aid Contract Litig.*, MDL No. 1914, 07-cv-2720, 2011 WL 4020862 (D.N.J. Sept. 9, 2011) (applying lodestar recovery despite tangible recovery to class); *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, No. 04-5184 (GEB), 2009 WL 411856, at *5 (D.N.J. Feb. 17, 2009) (percentage of recovery appropriate where counsel obtained "the significant result of *(cont'd)*

recovery or similarly tangible consideration was provided by the Settlement and Plaintiffs' counsel should not be rewarded as if it had.

> ### 2.   The therapeutic benefits here provided only limited benefit under applicable Delaware authority.

Plaintiffs' Fee Application ignores Delaware precedent in which the Court of Chancery has awarded significantly lower fees for identical benefits.  For example, *In re William Wrigley Jr. Company Shareholders Litigation* is highly analogous to the case at bar.  In *Wrigley*, a shareholder challenge to a merger of comparable size (valued in excess of $23 billion) was settled for therapeutic benefits virtually identical to those achieved here.  2009 WL 154380, at *1. In the settlement, defendants agreed to reduce the $690 million termination fee, shorten the "tail" period for payment of the termination fee and provide supplemental disclosures.  *Id.* at *2.  The Court of Chancery granted $690,000 in fees and expenses, inclusive.  *Id.* at *6.  As reflected herein and in the attached chart, the balance of Delaware fee authority is in line with the *Wrigley* precedent, and none supports Plaintiffs' exorbitant fee request.  *See, e.g.*, Chart attached hereto as Exhibit A; *Duva v. GLG Partners, Inc.*, C.A. No. 5512-VCS, Trans. at 45 (Del. Ch. Jan. 24, 2011) (granting $750,000 in fees in connection with $1.6 billion sale, where settlement obtained 45.8% reduction in termination fee, reduction in tail fee, shortening of matching rights period, and additional disclosures); *Gober v. Cooper*, C.A. No. 4276-CC, Trans. (Del. Ch. Nov. 23, 2009) (awarding $700,000 in fees and expenses for settlement reducing termination fee by 10% and additional disclosures); *Smith v. ServiceMaster Co.*, C.A. No. 2924-VCS, Trans. at 46-52 (Del.

---

*(cont'd from previous page)*
$62,000,000 for [] the Class"); *First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d 500 (E.D. Pa. 2007) (awarding $425,000 in attorneys' fees based on percentage of recovery where cost of settlement implementation was measurable); *Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139 (3d Cir. 1998) (reversing award of fees, finding application of common benefit award inappropriate); *Merola v. Atl. Richfield Co.*, 515 F.2d 165 (3d Cir. 1975) (stating that lodestar method appropriate where no tangible benefit conferred by settlement).

Ch. Sept. 29, 2008) (awarding $500,000 in connection with $4.7 billion deal, which court believed was "generous" for additional disclosures, agreement not to oppose target's payment of dividend, and reduction in $100 million termination fee).

While ignoring these relevant Delaware precedents regarding fee awards in cases involving reduced termination fees and other therapeutic benefits, Plaintiffs suggest that disclosures should support millions in attorneys' fees.  (Pl. Br. at 22.)  Nothing could be further from the truth.  As the Court of Chancery has repeatedly explained, the average award for disclosures is a fraction of the amount Plaintiffs' counsel claims here.  *See In re Burger King Holdings Inc. S'holders Litig.*, C.A. No. 5808-VCL, Trans. at 9 (Del. Ch. Jan. 19, 2011) (noting that disclosure-based settlements are "routinely price[d] in the 400 to 500,000 range"); *In re Allion Healthcare, Inc. S'holder Litig.*, C.A. No. 5022-CC, Trans. at 88-89 (Del. Ch. Jan. 19, 2011) (the "more or less . . . going rate for disclosure claims . . . is between $200,000 and $400,000").  It has also been suggested that an award of $215,000 is "about the top level of a fee" warranted by therapeutic disclosures.  *In re Monogram Biosciences, Inc. S'holders Litig.*, C.A. No. 4703-CC, Trans. at 15 (Del. Ch. Jan. 26, 2010).

Even Plaintiffs' own authority demonstrates the absurdity of their $18,000,000 fee request. ***None*** of their cited authority awards even half of the astronomical sum requested here.  (Pl. Br. at 22 (citing *In re Schering-Plough/Merck Merger Litig.*, No. 09-cv-1099DMC, 2010 WL 1257722, at *18 (D.N.J. Mar. 24, 2010) (awarding one-sixth of the fees requested here for disclosure-based settlement); *In re DirecTV Grp., Inc. S'holder Litig.*, C.A. No. 4581-VCP, Trans. (Del. Ch. Nov. 25, 2009) (settlement resulted in changes to merger agreement, majority-of-the-minority shareholder vote, and additional protections for minority shareholders); *Minneapolis Firefighters' Relief Ass'n v. Ceridian Corp.*, C.A. No. 2996-CC, Trans. and Order

11

(Del. Ch. Feb. 25, Mar. 24, 2008) (stipulated $5.14 million in fees for eliminating walk-away right, releasing competing bidders from standstills, lowering threshold for superior proposal, and disclosures); *In re Elec. Data Sys. Class Action Litig.*, No. 366-01078-2008 (Tex. Dist. Ct. Collin Cnty. Dec. 23, 2008) (Texas state case, settlement also included a $25 million dividend payment to shareholders); *In re MONY Grp. Inc. S'holders Litig.*, C.A. No. 20554-NC, Order (Del. Ch. Oct. 2, 2004) (settlement after preliminary injunction that included additional disclosures, modifications to merger agreement to allow target to pay special dividend to shareholders worth $7.4 million, and increasing walk-away threshold).)[6]

Additionally, as the Court of Chancery recently illustrated, the minor postponement of a shareholder vote provides a *de minimus* benefit to shareholders. *In re Celera Corp. S'holder Litig.*, C.A. No. 6304-VCP, slip op. at 85 (Del. Ch. Mar. 23, 2012) (reducing plaintiffs' fee request by 60%, awarding $1,350,000 in fees and expenses for modification of deal protections including "problematic" no solicitation provision, supplemental disclosures and one-week extension of tender offer). Likewise, reduction in matching rights provides an equally *de minimus* benefit in combination with the other Settlement terms. *See, e.g.*, *Minneapolis Firefighters' Relief Ass'n v. Amore*, C.A. No. 6175-VCN, Trans. at 81 (Del. Ch. July 25, 2011).

The modified deal protections here included customary match rights, a standard no-shop and a termination fee totaling only 3.25% of equity value – provisions which have been repeatedly upheld under Delaware law. *In re Toys "R" Us, Inc. S'holder Litig.*, 877 A.2d 975 (Del. Ch. 2005) (*cited* by Plaintiffs; refusing to issue injunction, approving approximately 3.75%

---

[6] (Pl. Br. at 14 (citing *Tandycrafts*, 562 A.2d at 1167 (awarding $180,000 in fees for disclosure-based settlement); *Bartlett*, 2002 WL 568417, at *1 (awarding fees of $234,063 for disclosure-based settlement)); *see also Eisenberg v. Chi. Milwaukee Corp.*, C.A. No. 9374, 1988 WL 112910 (Del. Ch. Oct. 25, 1988) (*cited* by Plaintiffs; awarding $200,000 fees and expenses where corporation's dividend policy was revised resulting in monetary consideration for shareholders), *aff'd*, 560 A.2d 489 (Del. 1989).

termination fee); *see also In re Smurfit-Stone Container Corp. S'holder Litig.*, No. 6164-VCP, 2011 WL 2028076, at *21 (Del. Ch. May 20, revised May 24, 2011) (*cited* by Plaintiffs; refusing to issue injunction, explaining that deal protections such as those here are "customary in public company mergers today"); *Phelps Dodge Corp. v. Cyprus Amax Minerals Co.*, C.A. No. 17398, 1999 WL 1054255 (Del. Ch. Sept. 27, 1999) (*cited* by Plaintiffs; refusing to issue injunction where termination fee was 6.3%). These standard terms were included in a transaction offering shareholders a ***28% premium*** to market as of the time the transaction was announced. While sufficient to support the Settlement, the modification of these customary deal terms cannot support a windfall fee award of $18 million.

### 3.     *In re Compellent Technologies, Inc.* **is not to the contrary.**

*In re Compellent Technologies, Inc. Shareholders Litigation*, C.A. No. 6084-VCL, 2011 WL 6382523 (Del. Ch. Dec. 9, 2011), should not be applied in the manner Plaintiffs suggest. First, the mathematical formula and data inputs used in *Compellent* were, as the opinion itself states, not intended to set out "definitive pricing guidance" for therapeutic benefits. 2011 WL 6382523, at *1. *See also In re Int'l Coal Grp., Inc. S'holders Litig.*, C.A. No. 6464-VCP, Trans. at 69 (Del. Ch. Jan. 30, 2012) (awarding $500,000 attorneys' fees for settlement involving reduced termination fee and disclosures, stating "because I do not believe that the reduction in the termination fee standing alone made a topping bid particularly more likely, I am reluctant to apply *Compellent*'s 8 percent probability input mechanically in the circumstances of this case"). Even the head of the Court of Chancery has refused to adopt the *Compellent* methodology – the Chancellor recently remarked, "I'm still not buying into the mathematical models of the

probabilities of topping bids and all this kind of stuff." *In re J. Crew Grp., Inc. S'holders Litig.*,
C.A. No. 6043-CS, Trans. at 77 (Del. Ch. Dec. 14, 2011).[7]

Second, if *Compellent* governed the Fee Application as Plaintiffs suggest, its application
here would contravene Delaware Supreme Court authority.  In *Bartlett*, a case Plaintiffs
themselves cite, a plaintiff argued that it should be credited for a $48,000,000 "benefit" resulting
from the movement in the stock price of two companies involved in a stock-for-stock merger
during a fifteen day delay of a shareholder vote.  2002 WL 568417, at *3.  Former Chancellor
Chandler explained that, while the price movement created a "theoretical" increase in the value
of the merger for target shareholders, "no real monetary benefit was conferred on [the target's]
shareholders as a result of the lawsuit."  *Id.* at *3.  The court therefore rejected the request of
plaintiffs' counsel for 15% of the theoretical $48,000,000 benefit, explaining:

> That $48,000,000 "benefit" is a mathematical construct that springs from the
> fertile and creative imagination of those who would lay claim to a part of it, and
> expect someone else to pay it.

*Id.* at *4.  The court awarded $234,063 in fees and costs, and the Delaware Supreme Court
affirmed the decision.  *Id.  Bartlett* remains good law.

Here, Plaintiffs argue that as a result of their efforts a theoretical benefit between $153
and $374.8 million was created by the deal protections modifications secured by the Settlement.
(Pl. Br. at 2.)  Plaintiffs seek 11.8% of that theoretical recovery.  (*Id.* at 28.)  Yet, just as in
*Bartlett*, no actual monetary benefit was conferred upon the shareholder class.  Applying

---

[7] The settlement in *J. Crew* provided $16 million in monetary recovery for the class, and still resulted in a
fee award a fraction of Plaintiffs' request here.  While the raw fee award in *J. Crew* is unhelpful precedent
as a result of this monetary component, it demonstrates the absurdity of an $18 million fee request where
a class receives no monetary benefit.

*Compellent* to award a windfall fee based on a percentage of a theoretical recovery would contravene *Bartlett*.[8]

Third, the *Compellent* court crafted its mathematical formula to aid in "**resisting overly generous awards** . . . . "  *Id.* at *19 (emphasis added).  Plaintiffs' arguments that *Compellent* justifies their windfall request ignore that plain intent.  The *Compellent* court dramatically reduced **– by 60% –** plaintiffs' fee request.  *Id.* at *1.  Likewise, the *Celera* court employed the *Compellent* formula to reduce plaintiffs' fee request by more than 60%.  C.A. No. 6304-VCP, slip op. at 1, 76-80.[9]  Applying the mathematical formula of *Compellent* to enlarge a fee award here beyond that justified under the *Sugarland* factors would be a misapplication of Delaware law.

### 4. Plaintiffs' application of *In re Compellent Technologies, Inc.* is flawed.

Even if applied, Plaintiffs' arguments concerning *Compellent* are rife with obvious error and do not support their windfall fee request.  (Pl. Br. at 13-15, 16, 26-27, 29, 30, 31, 35.)  According to Plaintiffs' expert Guhan Subramanian, the Court should ignore that the Settlement resulted in absolutely no monetary recovery for Medco shareholders, and instead compensate Plaintiffs' counsel as if it had secured $153 to $374.8 million in additional cash consideration for the class.  Under this theory, buttressed only by a flawed expert analysis, Plaintiffs contend that

---

[8] Notably, it appears that none of the parties to *Compellent* brought *Bartlett* to the court's attention.  The same is true of the parties to *In re Celera Corp. S'holder Litig.*, C.A. No. 6304-VCP (Del. Ch. Mar. 23, 2012).  If it chooses to apply *Compellent*, the Court should consider certifying to the Delaware Supreme Court the question of whether Delaware law, post-*Bartlett*, permits an award of fees based on a percentage of a therapeutic benefit.  *See* Del. Supr. Ct. R. 41(a)(ii) (permitting a United States District Court to certify *sua sponte* a question of Delaware law to the Delaware Supreme Court).

[9] In *In re RehabCare Group, Inc. Shareholders Litigation*, C.A. No. 6197-VCL (Del. Ch. Sept. 7, 2011), a transcript ruling Plaintiffs fail to cite, the Delaware Court of Chancery employed a similar formula in order to reduce a plaintiffs' fee request by more than 50% in a settlement that included a cash component.  Notably, it appears the parties to *RehabCare* also failed to present *Bartlett* to the court.

securing *no monetary recovery for the class* should result in higher fees for plaintiffs' counsel than where a multi-million settlement fund is created.[10] *Cf. La. Mun. Police Emps.' Ret. Sys. v. Sealed Air Corp.*, No. 03-CV-4372 (DMC), 2009 WL 4730185 (D.N.J. Dec. 4, 2009) (awarding $6 million in fees where settlement provided $20 million fund for class). This is not the law. *See Wrigley*, 2009 WL 154380, at *6 (noting that plaintiff's $690,000 fee application "reflect[ed] the rather modest benefits achieved in the settlement and the *absence of any monetary component to it*") (emphasis added).[11]

Even if the Court were to use the rough guidepost of *Compellent*, the proper data to examine is whether there was an "increased likelihood of a topping bid *due to the deal modifications*. . . ." *Celera*, C.A. No. 6304-VCP, slip op. at 77 (emphasis added). As explained in the accompanying affidavit of Kevin Dages, attached hereto as Exhibit B, Subramanian's analysis ignores that no competing bidder actually emerged after the Settlement and that no additional monetary consideration actually flowed to the shareholder class. (Dages Decl. ¶¶ 7, 13-15.) Indeed, Subramanian ignores even the record evidence that the possibility of a competing bidder emerging as a result of the Settlement was *close to zero*.[12] (*Id.* ¶ 15.) As

---

[10] For example, using a 25% of fund measure, Plaintiffs would have to secure nearly $75 million for the class in order to justify an $18 million attorneys' fee award. Plaintiffs cannot credibly argue that securing no monetary recovery for the class should be rewarded equally.

[11] Plaintiffs' expert affidavit contains a number of impermissible legal opinions, and should be rejected for this reason. *Casper v. SMG*, 389 F. Supp. 2d 618, 621 (D.N.J. 2005).

[12] The only record evidence on the issue proves that the chances of a competing bid were near zero even before the Settlement. "[T]he issue with Wal-Mart was the synergy opportunity was negligible, because it's a very different company obviously. . . . With regard to Walgreen's, the synergy opportunity with Walgreen's would not have been that great either. Plus, Walgreen's had expressed and acted on the fact that it has no interest in owning a PBM." (Rubino at 101-102.) *See also* (Sachdev at 54 (Wal-Mart had "expressed no willingness to execute any sort of large healthcare transaction")); (Rubino at 44 ("it was unlikely they [CVS] were interested in buying anything because they were and I believe still are under FTC scrutiny").) In their presentations and discussions, Medco's investment bankers also discussed the
*(cont'd)*

Dages explains, after the Merger was announced, the deal price was reduced by in excess of $5 billion as a result of the fall in Express Scripts' stock price, yet no competing bidder emerged. (*Id.* ¶ 14.)  If a $5 billion decrease in acquisition cost did not result in a competitive bid, there is no reason to believe a mere $300 million additional decrease in a termination fee provision would.  In transactions as large as the Merger here, competing bidders are generally unlikely, whether before or after deal modifications.  *See In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), Trans. at 15-17 (D.N.J. Mar. 24 2010) (plaintiffs' counsel stating that expecting competing bidder in large pharmaceutical merger "just wasn't realistic").

As Dages also explains, Subramanian's analysis relies upon much of the same flawed data the *Compellent* court cautioned against using in future fee applications.  (Dages Decl. ¶¶ 9-15.)  And, not only does Subramanian use stale data, some of it ***dating back to 1975***, he also ignores the relevant data proving a "near-zero percent chance of a competing bidder emerging" here.  (*Id.* ¶ 15.)[13]  Indeed, since 2003, in transactions greater than $10 billion, ***no competing bidders have emerged after a reduction in a termination fee***.  (*Id.* ¶ 17.)  A recent independent study conducted by Cornerstone Research – highly regarded experts with no apparent connection to this litigation – confirms Dages' results and found no example of a reduction in termination fee leading to a higher or better offer for shareholders.  (*Id.* ¶ 20.)  Applying the proper inputs

_____

*(cont'd from previous page)*
lack of viability of United Healthcare, Walgreen's and CVS-Caremark as potential bidders for Medco. (*See, e.g.*, MED00003930, MED00003769, MED00003920.)

[13] Subramanian's failure to focus on the relevant real world data led the Delaware Court of Chancery to note the dangers in applying his academic "social science" in the "faster-moving context of real world commerce."  *Toys "R" Us, Inc. S'holder Litig.*, 877 A.2d at 1015 n.61 (pointing out "the caution courts should use in relying upon social science literature that has not survived rigorous scrutiny over time").  The Court of Chancery has also called into question Subramanian's analysis before when, as here, it utilized flawed data.  *In re Cox Commc'ns, Inc. S'holders Litig.*, 879 A.2d 604, 627-29 (Del. Ch. 2005) (calling Subramanian's analysis "strained" and "unconvincing," and criticizing his use of flawed data set).

results in a nominal fee award here, where the likelihood of a topping bid due to the deal modifications was near zero.[14]

In sum, while the common place therapeutic benefits presented here are sufficient to support the Settlement, they do not support an $18 million fee award. As reflected in the attached chart, Delaware law consistently values similar therapeutic benefits in the $500,000 to $3.25 million range, and Plaintiffs' fee award should approximate the most applicable precedent, which awarded $690,000.

**B.    Difficulty Or Complexity Of The Litigation And Its Contingent Nature.**

Nothing about this litigation was particularly novel or complex, despite Plaintiffs' claims to the contrary. (Pl. Br. at 31-34.) Rather, this was one of dozens of cookie-cutter deal litigation cases filed every year. As one report recently noted, in the past two years, "almost every acquisition [over $100 million] elicited multiple lawsuits" immediately after the deals were announced, in which "common allegations" challenged "the existence of restrictive deal protections that discouraged additional bids" – the very same allegations made by Plaintiffs here.[15] Indeed, Delaware courts regularly find that similar work (resulting in similar modest results) is "not overly complex or difficult by the standards of this Court." *Bartlett*, 2002 WL 568417, at *6. The lack of difficulty or complexity of the litigation counsels in favor of a reduced fee award under Delaware law.

---

[14] This is the same result the Court of Chancery recently reached when awarding $500,000 in attorneys' fees in connection with a settlement containing a termination fee reduction. There, while the court found that the termination fee reduction was of "some benefit," the court explained that "the reduction in the termination fee does not strike me as making a topping bid particularly more likely in the circumstances of this case." *In re Int'l Coal*, C.A. No. 6464-VCP, Trans. at 68-70 (distinguishing *Compellent*, attributing only $50,000 to $75,000 in attorneys' fees for the termination fee reduction because of unlikelihood of a topping bidder).

[15] *See* http://blogs.law.harvard.edu/corpgov/2012/03/04/developments-in-ma-shareholder-litigation/.

The same is true about the contingent nature of this matter.  Expedited deal litigation does not carry the same contingent risks as protracted litigation.  *See In re Burlington N. Santa Fe S'holder Litig.*, C.A. No. 5043-VCL, Trans. at 65 (Del. Ch. Oct. 28, 2010) (noting that the contingency nature of the fee should not count toward a larger fee in expedited deal litigation because of the "obvious settlement opportunit[ies]" not present in protracted litigation).  Moreover, in similar matters involving the same therapeutic benefits achieved here, the Delaware courts have refused to count this factor in plaintiffs' favor.  *See, e.g.*, *In re Instinet Grp., Inc. S'holders Litig.*, C.A. No. 1289-N, 2005 WL 3501708, at *2-4 (Del. Ch. Dec. 14, 2005) (awarding $450,000 in fees and expenses, explaining that when "a substantial amount of time and expense is spent achieving only a modest result, the contingent nature of the undertaking does not weigh in favor of awarding a premium to the investment of time and effort").

**C.     Stage At Which The Litigation Ended.**

This factor also counsels against a generous fee award.  As discussed further below, Plaintiffs spent almost no effort litigating the merits of their case because the Settlement giving rise to the Fee Application was negotiated quickly after the various Plaintiffs' counsel resolved their leadership disputes.  As a result, Plaintiffs never pressed a preliminary injunction or conducted extensive discovery.  The Delaware Court of Chancery discounts fee awards in such a situation.  *See In re Instinet Group, Inc.*, 2005 WL 3501708, at *2 ("While the court does not penalize plaintiffs' counsel who achieve significant settlements early in litigation, it is also true that those who promptly recognize the inherent weakness of their claims and settle for modest gains should not expect to be rewarded with premium fee awards.").

**D.      Time And Effort Of Plaintiffs' Counsel – The "Lodestar."**

The final factor under *Sugarland* – the time and effort of Plaintiffs' counsel – mirrors the lodestar analysis conducted by this Court in fee awards governed by federal law.[16]

In a lodestar evaluation, a court "first determines the hours reasonably expended by counsel in successfully achieving the result sought by litigation and then multiplies those hours by a reasonable hourly rate for the attorney's services." *In re Schering-Plough*, 2010 WL 1257722, at *17 (quoting *Joy Mfg. Corp. v. Pullman-Peabody Co.*, 742 F. Supp. 911, 913 (W.D. Pa. 1990)). *See also Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). Such a calculation "requires the Court to 'carefully and critically' evaluate the hours and the hourly rate put forth by counsel," and the party seeking fees bears the burden of proving that its request is reasonable. *Blakey v. Cont'l Airlines, Inc.*, 2 F. Supp. 2d 598, 602 (D.N.J. 1998) (citation omitted). Plaintiffs fail to carry their burden of proving reasonableness under a lodestar analysis, and have not bothered to submit argument or evidence to support the appropriate hourly rate in this Court or whether a lodestar multiplier is appropriate.

**1.      Plaintiffs' hours were not reasonable.**

Plaintiffs' request of 5,726.75 lodestar hours is unreasonable, and must be discounted. (Pl. Br. at 39.) This bloated figure includes: (a) non-compensible time incurred by *twenty-six*

---

[16] This Court recently held that federal law will apply to the reasonableness of an attorneys' fee request following a class action settlement agreement in certain instances, irrespective of *Erie*. *Dewey*, 728 F. Supp. 2d at 588-89 (*cited* by Plaintiffs; "If, however, the fee award has occurred as a result of the parties' private agreement in a federal class action settlement, no fee shifting occurs. In such a case, federal law, rather than state law, governs the decision concerning fees and costs.") (citation omitted). *Dewey* is currently under review by the Third Circuit Court of Appeals, and oral argument was held on March 27, 2012. (*See* 3d Cir. Docket No. 10-3618(L).) In the event the Court applies federal law to the Fee Application, the lodestar analysis examined in this section would apply. *See Schering-Plough*, 2010 WL 1257722, at *17 (*cited* by Plaintiffs; applying lodestar to attorneys' fee award in similar shareholder challenge to proposed merger); *see also Plymouth Cnty. Contributory Ret. Sys. v. Hassan et al.*, No. 08-1022 (DMC)(JAD), 2012 WL 664827 (D.N.J. Feb. 28, 2012) (applying lodestar to attorneys' fee award in shareholder derivative action).

different law firms and *170* different timekeepers (including *64 partners*, *52 associates*, and *54 support staff*) in the non-merits based fight between New Jersey and Delaware over control of the litigation; and (b) unreasonable duplication of any merits-based effort devoted to litigating the same claims in multiple jurisdictions.

> **(a)   Twenty-six different law firms fight over who will control the litigation, and where it will proceed.**

Plaintiffs fail to explain any rational, merits-based need for having twenty-six law firms pursue the same claims on behalf of the same class.  Such inherent duplication provides no benefit to the class and is not compensable.  *See In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 595 (3d Cir. 1984) (duplicative time and effort will not be credited because they provide no benefit to the class); *Finkel v. Am. Oil & Gas, Inc.*, No. 10-cv-01808-CMA-MEH, 2012 WL 171038, at *5 (D. Colo. Jan. 20, 2012) (disallowing duplicative fees in multi-jurisdictional merger litigation settlement, holding "compensation for every hour billed by eight specialized law firms would be unreasonable").

As the record reflects, the efforts of the vast majority of these twenty-six law firms were ***not*** merits-based.  In fact, other than carbon-copy initial complaints, the only merits-based motion or pleading in any jurisdiction was filed by the six firms appointed as lead plaintiffs' counsel in this Court and in Delaware.[17]  It is equally obvious from the record that a significant portion of the time expended by these six firms was not devoted to advancing class claims.  For example, the Delaware squabble over lead counsel position lasted until August 23, 2011, when

---

[17] For example, Plaintiffs include the time of one firm, Rosenthal, Monhait and Goddess, P.A., that *withdrew* from the litigation after it was not appointed lead counsel.  (*See* Taylor Decl. Exhibit BB.) Obviously, that firm's time could not have been devoted to the benefits obtained by the settlement.  *Finkel*, 2012 WL 171038, at *3 (counsel will only be rewarded for time "reasonably related to the benefit conferred on the class by the parties' settlement agreement").

the Court of Chancery ordered a lead counsel structure. *In re Medco Health Solutions, Inc. S'holders Litig.*, C.A. No. 6720-CS, Order (Del. Ch. Aug. 23, 2011). The MOU to settle this action was signed on November 7, 2011. Thus, substantive litigation in Delaware lasted little more than ten weeks, yet Plaintiffs seek reimbursement for nearly six months of work.

Similarly, the bulk of the litigation efforts in this Court was devoted to avoiding the Delaware forum, and wrestling control of the case away from the Delaware plaintiffs. As late as October 3, 2011, the Federal Plaintiffs continued to argue over *where* litigation should proceed. (*See, e.g.*, Dkt. No. 69.) Time devoted to infighting between prospective class counsel over where class litigation should proceed cannot be counted in a lodestar analysis. As one federal court recently explained after similar multi-forum litigation settled:

> ***[T]he numerous briefs . . . that Plaintiffs filed to avoid litigating this case in a single forum demonstrate duplication of effort, to say nothing of time spent on tasks that have no obvious correlation to the eventual benefit conferred on the shareholders.*** On this point, Plaintiffs offer the singularly unconvincing argument that the fees and expenses they incurred while fighting Defendants' removal motions and motions to dismiss the Nevada actions should be included in a fee award because "defendants' venue-shopping . . . made those expenditures necessary." In addition to evincing a misunderstanding of the notion of venue-shopping, ***Plaintiffs' statement also betrays a logic that the Court rejects out of hand – namely, that class action lawyers should be rewarded for "applying additional leverage," as Plaintiffs put it, by filing numerous carbon-copy lawsuits, opposing their consolidation, and then billing the defendant corporation for such opposition when a settlement occurs.*** Time spent on tasks like opposing consolidation does not strike the Court as reasonably related to the benefit conferred on the class by the parties' settlement agreement and, therefore, will not be compensated.

*Finkel*, 2012 WL 171038, at *3 (awarding $200,000 in attorneys' fees and expenses for therapeutic settlement) (emphasis added).[18]

---

[18] The few affidavits with billing details reference time spent wrangling over lead counsel structure. (*See, e.g.*, Taylor Decl. Exs. G, I, L, N, O, T, BB.)

So too here.  Time spent fighting over the appropriate forum and lead counsel status is not reasonably related to the benefits conferred on the class by the Settlement, and must be discounted.  *Id.*; *see also Off v. Ross*, C.A. No. 3468-VCP, 2009 WL 4725978, at *7 (Del. Ch. Dec. 10, 2009) (awarding $250,000 in fees, declining to credit plaintiffs' counsel here with hours that were not "causally related to the benefit obtained"); *Bartlett*, 2002 WL 568417, at *5 (refusing to award fees for work that did "not relate to the therapeutic benefit and, consequently, [did] not warrant an award payable by the company"); *Siegman v. Palomar Med. Techs., Inc.*, C.A. No. 15894, 1998 WL 409352, at *7 (Del. Ch. July 13, 1998) (counsel not entitled to compensation for "litigative efforts that did not result in any compensable benefit").

### (b)    *170 different timekeepers needlessly duplicate the same tasks.*

Duplicative time should not be counted toward the lodestar.[19]  *See In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 595 (upholding trial court's discount of duplicate hours spent by firms not appointed lead counsel, noting "the very organizational structure agreed upon by plaintiffs' counsel" mandated this result); *Cityside Archives, Ltd. v. N.Y.C. Health & Hosp. Corp.*, 37 F. Supp. 2d 652, 658 (D.N.J. 1999) (court must exclude time that is "excessive, redundant or otherwise unnecessary").

With twenty-six firms, and 170 different timekeepers, purportedly litigating garden-variety deal claims, duplication is obvious on its face.[20]  *See, e.g.*, *In re QVC, Inc.*, C.A. No.

---

[19] A significant amount of time, across at least four firms, was spent "monitoring parallel litigations" and should be discounted.  (*See* Taylor Decl. Ex. D ¶ 4(i), (j), (k), (l), (m); Ex. E ¶ 4(g), (h); Ex. T ¶ 4(h); Ex. U ¶ 5.)  Not only is it duplicative for multiple people at different firms to engage in the same task, but all of this time would have been avoided if Plaintiffs coordinated with each other and in one jurisdiction.

[20] Counting the affidavits of the New Jersey state court Plaintiffs' counsel, who moved to intervene on March 16, 2012, it appears that seven additional Plaintiffs' firms and twenty-nine more Plaintiffs' lawyers were needlessly duplicating tasks in a third forum.  (Dkt. No. 101.) This once again evidences Plaintiffs' inability to coordinate with each other and massive duplication, and, for the reasons set out in Express

*(cont'd)*

13590-NC, 1997 WL 67839, at *3 (Del. Ch. Feb. 5, 1997) ("the sheer number of counsel" led the court "to conclude substantial duplicative effort occurred"); *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, No. 02-cv-01533-WYD-BNB, 2009 WL 1973501, at *8 (D. Colo. July 6, 2009) (reducing hours where 17 people billed on behalf of plaintiff, stating "there appears to be a substantial duplication of efforts"); *In re Diamond Shamrock Corp.*, C.A. No. 8798, 1989 WL 17424, at *2 (Del. Ch. Feb. 23, 1989) (disregarding hours that "appear[] to have been excessive, and could only have resulted from the duplication of attorney effort"); *Dewey*, 728 F. Supp. 2d at 609 (explaining that the "massive amount of work in this case was the direct result of the plaintiffs' decision to file their complaints as they did"); *In re Cox Radio, Inc. S'holders Litig.*, C.A. No. 4461-VCP, 2010 WL 1806616, at *21 (Del. Ch. May 6, 2010) (reducing plaintiff's fee request, concluding "Plaintiffs' counsel conducted this litigation in an inefficient or duplicative manner"), *aff'd*, 9 A.3d 475 (Del. 2010).

Indeed, one federal court recently found that the lodestar request submitted by the firm acting as Co-Lead Delaware counsel here was excessive and unacceptable, where counsel submitted a lodestar of 3,002.30 hours and $1,393,227.50 – significantly less than the claimed lodestar here. *See Plumbers Union Local No. 12, Pension Fund v. Ambassadors Grp. Inc.*, No. CV-09-0214-JLQ, Order re: Fairness Hearing  at 2 (E.D. Wash. Dec. 7, 2011) (finding the "lodestar submission to be excessive both as to hours billed and hourly rates"); Hearing on Proposed Class Action Settlement, Trans. at 51 (Nov. 30, 2011) ("I think the hours that have been included in the Lodestar are excessive").  The unreasonableness of the lodestar here is reinforced by the fact that these firms regularly engage in this type of litigation.  *See Plumbers*

---

*(cont'd from previous page)*
Scripts' response to the Motion to Intervene, this Court should discount such duplicative, non-compensable time, and award a single, unified fee to all Plaintiffs' counsel.

*Union Local No. 12*, No. CV-09-0214-JLQ, Memorandum re: Fairness Hearing at 2 (E.D. Wash. Nov. 23, 2011) ("the court has concerns as to the necessity for and the reasonableness of the time spent thereon by a law firm with prior similar experience that specializes in class action and securities litigation").

Perhaps concerned about the perception of duplication, Plaintiffs have failed to submit detailed time and task descriptions with their affidavits.[21]  This failure contravenes Delaware and federal case law, as well as Local Rule 54.2.  *See* L. Civ. R. 54.2(a); *Brinckerhoff v. Tex. E. Prods. Pipeline Co.*, 986 A.2d 370, 397 (Del. Ch. 2010) (finding claim of 2,760.2 hours for litigating similar action was "facially implausible," particularly in light of the lack of detailed records).  As a result, the true extent of duplication is impossible to discern on this record and the Court should reduce the lodestar accordingly.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (district court may reduce a fee award when "the documentation of hours is inadequate").  Indeed, the Supreme Court has admonished that attorneys seeking fees "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims" to which time was devoted.  *Id.* at 436 (holding that fee awards should be reduced for inadequate documentation).[22]  *See also Plumbers Union Local No. 12*, No. CV-09-0214-JLQ, Hearing on

---

[21] In many instances, the affidavits provide no description whatsoever of what efforts the firms actually contributed toward the litigation.  (*See, e.g.*, Taylor Decl. Ex. F (no explanation, claiming 458.50 hours); Ex. H (no explanation, claiming 73.3 hours); Ex. M (no explanation, claiming 156.3 hours), Ex. S (no explanation, claiming 167.2 hours); Ex. V (no explanation, claiming 46 hours).)  Those firms offering explanation do so in a conclusory and limited fashion, and are wholly insufficient to determine whether time spent was reasonable.  (*See, e.g.*, *id.* Ex. P (Motley Rice LLC, claiming nearly 300 hours of non-delineated work); *id.* Ex. H (Pomerantz Haudek Grossman & Gross LLP, claiming 73.3 hours of non-delineated work); *id.* Exs. F, M (Robbins Geller Rudman & Dowd LLP and Bouchard Margules & Friedlander P.A. collectively claiming nearly 615 hours of non-delineated work).)

[22] *See also Joy Mfg. Corp. v. Pullman-Peabody Co.*, 742 F. Supp. 911, 914 (W.D. Pa. 1990) (explaining that a fee application should include "fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement, negotiations," etc) (quotation omitted), *aff'd*, 932 F.2d 96 (3d Cir. 1991).

Proposed Class Action Settlement, Trans. at 58 (E.D. Wash. Nov. 30, 2011) (requesting counsel to provide additional breakdown of time per specific task); *In re Diamond Shamrock Corp.*, 1989 WL 17424, at *2 (reducing hours because billing statements were insufficiently detailed for court to determine what hours were spent on non-compensable activities).

The limited documentation provided proves the existence of duplicative efforts. Based on these deficient affidavits, it appears that:

- at least 25 Plaintiffs' lawyers at 15 different firms participated in the limited document and deposition discovery (*see* Taylor Decl.; *id.* Exs. B, E, H, I, J, K, L, N, O, R, T, W, Y, X);[23]

- at least 20 lawyers at 9 different Plaintiffs' firms drafted briefs of some unidentified nature, despite the fact that only one substantive, merits-based brief was ever filed in ***any*** jurisdiction (*see* Taylor Decl.; *id.* Exs. B, E, I, J, O, R, Z, AA);

- at least 12 Plaintiffs' lawyers at 10 different Plaintiffs' firms reviewed SEC filings (*see* Taylor Decl. Exs. B, E, I, L, O, T, U, X, Y, AA);

- at least 7 Plaintiffs' firms and an unidentified number of Plaintiffs' lawyers spent time on lead counsel structure (*see* Taylor Decl. Exs. G, I, L, N, O, T, BB); and

- at least 4 different Plaintiffs' firms and an unidentified number of Plaintiffs' lawyers spent time unnecessarily "monitoring parallel litigation" (*see* Taylor Decl. Ex. D ¶ 4(i), (j), (k), (l), (m); Ex. E ¶ 4(g), (h); Ex. T ¶ 4(h); Ex. U ¶ 5).

Because Plaintiffs' affidavits fail to provide sufficient detail for a precise discounting, the Court should apply an across the board discount for duplication. *See, e.g.*, *Compass Bank v. Veytia*, No. EP-11-CV-228-PRM, 2012 WL 627756, at *4 n.13 (W.D. Tex. Feb. 24, 2012) (reducing claimed hours by 20%, noting "Courts have similarly reduced total hours by percentage" when presented with excessive or unnecessary work, and collecting cases); *In re*

---

[23] The majority of this was spent in confirmatory discovery, which cannot be fully credited in a lodestar award. *See Smith v. ServiceMaster Co.*, C.A. No. 2924-VCS, Trans. at 51 (Del. Ch. Sept. 29, 2008) (awarding $500,000 in fees and expenses for settlement involving reduction in termination fee and additional disclosures, noting there were "a lot of hours" spent on confirmatory discovery, and that while "you want responsible confirmatory discovery . . . you don't want a lot of plush," and reiterating that court needed to take that factor "into account" when setting a fee).

"Agent Orange" Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987) ("the district court has the authority to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application'"); In re BEA Sys., Inc. S'holders Litig., C.A. No. 3298-VCL, 2009 WL 1931641, at *1 (Del. Ch. June 24, 2009) (awarding $81,297 in fees and expenses for disclosure-based settlement, holding "most of that time and those costs was spent on aspects of the litigation that produced no benefit.  Recognizing the imprecision involved, I will assume that one-quarter of the time and costs are rationally attributable to the claims that resulted in the benefit."); In re Diamond Shamrock Corp., 1989 WL 17424, at *2 (where billing statements were insufficiently detailed, assuming a percentage discount of hours based on such activities was appropriate).

Plaintiffs' lodestar should be reduced to 1,138.32 hours, to eliminate the hours spent on duplication and non-beneficial activities.  This figure first eliminates the duplication of the work of twenty-six law firms by including only the time of the six firms responsible for the prosecution of the actions here and in Delaware: the three Interim Class Counsel appointed by this Court, the two Co-Lead Counsel in Delaware, and Delaware Liaison Counsel, which equals 3,414.95 hours.  The hours of these six Plaintiffs' counsel should be further discounted to account for non-compensable hours spent on activities that did not benefit the class.  Because Plaintiffs have not provided sufficient documentation to determine what portion of their time was devoted to these non-beneficial activities, a one-third reduction in the six firms' time results in 1,138.32 hours, a number that approximates the percentage of time devoted by Plaintiffs' counsel that was directed at the merits of the class claims.  See In re BEA Sys., Inc., 2009 WL 1931641, at *1 (assuming only one-quarter of time "rationally attributable to the claims that resulted in the benefit").  Thus, the total reasonable hours for the lodestar calculation should be 1,138.32.

27

**2.     The only evidence presented on hourly rates is $550 per hour.**

The second step of any lodestar calculation is the determination of the reasonableness of counsel's hourly rates, which involves examining both Plaintiffs' counsel's usual billing rates and prevailing market rates in the community.  *In re Schering-Plough*, 2010 WL 1257722, at *17; *Cityside Archives, Ltd.*, 37 F. Supp. 2d at 658.  Plaintiffs' counsels' own calculations imply a rate of approximately $550 per hour.  (Pl. Br. at 39 (arguing that 5,726.75 hours equals a lodestar of $3,149,852.25).)  However, this rate does not account for the different levels of seniority of the counsel involved, and such rate is plainly unsupportable for associate attorneys in New Jersey.

In this Court, market rates in the forum where the suit was filed are relevant to determine reasonable hourly rates.  *Pittsburgh League of Young Voters Educ. Fund v. Port Auth. Of Allegheny Cnty.*, No. 02:06-cv-1064, 2012 WL 604156 (W.D. Pa. Feb. 24, 2012) (reducing requested hourly rates); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703-05 (3d Cir. 2005) ("We therefore hold that district courts in the Third Circuit should award attorney fees based on the 'forum rate' rule as set forth in the Task Force Report.") (citing *Report of the Third Circuit Task Force on Court Awarded Attorney Fees*, 108 F.R.D. 237, 261 (1985)).  "Plaintiff bears the burden 'of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case.'"  *Conklin v. Pressler & Pressler LLP*, No. 10-3566, 2012 WL 569384, at *4 (D.N.J. Feb. 21, 2012).  Plaintiffs here, however, fail to offer *any* evidence of what constitutes a reasonable hourly rate in the District of New Jersey or any federal court in the Third Circuit.  *See id.*; *see also Plumbers Union Local No. 12*, No. CV-09-0214-JLQ, Order re: Motion for Attorneys Fees at 4 (E.D. Wash. Nov. 10, 2011) (criticizing counsel for submitting hourly rates of counsel based on their New York and California hourly billing rates "rather than rates based on the forum district").

Plaintiffs' cited cases from Delaware are similarly inapposite.  Each case Plaintiffs offer in an attempt to support a higher hourly rate involved an actual monetary recovery for shareholders, unlike here.  *See Dagron v. Perelman*, C.A. No. 15101, Trans. at 49-50 (Del. Ch. Aug. 29, 1997) (settlement obtained $120 million additional benefits for the class); *In re Digex, Inc. S'holder Litig.*, C.A. No. 18336, Trans. at 146 (Del. Ch. Apr. 6, 2001) ($165 million settlement fund, repayment of costs to the corporation, and corporate governance changes); *La. Mun. Police Emps. Ret. Sys. v. Crawford*, C.A. No. 2653, Trans. (Del. Ch. June 8, 2007) (no mention of hourly rate, plaintiffs obtained two TROs, resulting in a merger consideration increase giving $3.3 billion benefit to shareholders); *Franklin Balance Sheet Inv. Fund v. Crowley*, C.A. No. 888-VCP, 2007 WL 2495018 (Del. Ch. Aug. 30, 2007) (settlement involved damages of $23 million); *In re NCS Healthcare, Inc. S'holders Litig.*, C.A. No. 19786, 2003 WL 21384633 (Del. Ch. May 28, 2003) (plaintiffs obtained preliminary injunction, which permitted parties to enter into a higher priced deal netting $100 million more for shareholders).

The only evidence of a reasonable hourly rate submitted by Plaintiffs is their own implied rate of $550 per hour.  *Conklin*, 2012 WL 569384, at *4 (burden to prove reasonable rate belongs to plaintiff).  Further, the Delaware Court of Chancery has found that an hourly rate of approximately $500 is appropriate.  *Off*, 2009 WL 4725978, at *7 (awarding Grant & Eisenhofer fees which gave counsel "the benefit of a generous average hourly rate in excess of $500 and a modest multiplier for contingency"); *In re LaBarge Inc. S'holder Litig.*, C.A. No. 6368-VCN, Trans. at 33-34 (Del. Ch. Jan. 3, 2012) (awarding fees that implied an hourly rate of approximately $450).

Even if this rate is applied to the 1,138.32 hours, this hourly rate of $550 results in a lodestar of $626,076, which is approximately the maximum amount that Plaintiffs' counsel should be entitled to here.

### 3.    No lodestar multiplier is warranted here.

The lodestar number "is strongly presumed to yield a reasonable fee." *Washington v. Phila. Cnty. Ct. Com. Pl.*, 89 F.3d 1031, 1035 (3d Cir. 1996) (quoting *City of Burlington v. Dague*, 505 U.S. 557 (1992)). *See also Perdue*, 130 S. Ct. at 1673; *Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431 (D.N.J. 2009) (*cited* by Plaintiffs; awarding $383,733.31 in fees). Modification is proper only in "rare" and "exceptional" cases, and only if supported by both "specific evidence." *Pennsylvania v. Del. Valley*, 478 U.S. at 565. The fee applicant "has a significant burden to carry to obtain a contingency multiplier. . . ." *Joy Mfg. Corp.*, 742 F. Supp. at 914 (citation omitted). *See also Perdue*, 130 S. Ct. at 1673 ("the burden of proving that an enhancement is necessary must be borne by the fee applicant") (citation omitted). Plaintiffs fail to present any argument or evidence in support of any lodestar multiplier, much less one of 6x which they implicitly request, and therefore have failed to carry their burden of proof. No multiplier may be applied.[24]

### CONCLUSION

For the reasons set forth herein, Express Scripts respectfully requests that the Court deny Plaintiffs' request for $18 million in fees, plus expenses, and award Plaintiffs' counsel no more than $700,000, together with reasonable expenses.

---

[24] If anything, use of a *negative* multiplier, approved by the Third Circuit, could be appropriate here where the lack of coordination among counsel resulted in duplicative work by multiple law firms that was not beneficial to the Class. *In re Fine Paper Antitrust Litig.*, 751 F.2d at 600-01 (holding "the application of a negative quality multiplier was not an abuse of discretion" where "the case was managed in a manner that involved too many attorneys, spending too many hours").

Respectfully submitted,

*/s/ Joseph LaSala*

Robert J. Del Tufo
Andrew Muscato
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
Tel.:  (212) 735-3000
Fax:  (212) 735-2000
Robert.DelTufo@skadden.com
Andrew.Muscato@skadden.com

Edward P. Welch
Edward B. Micheletti
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
Tel.:  (302) 651-3000
Fax:  (302) 651-3001

DATED:  April 2, 2012

Joseph P. LaSala
MCELROY, DEUTSCH, MULVANEY &
   CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ  07962-2075
Tel.: (973) 993-8100
Fax: (973) 425-0161
Jlasala@mdmc-law.com

*Attorneys for Defendants Express Scripts,
Inc., Aristotle Merger Sub, Inc., Aristotle
Holding, Inc. and Plato Merger Sub, Inc.*

680766-Wilmington Server 1A - MSW