# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:<br><br>MEDCO/EXPRESS SCRIPTS MERGER LITIGATION | Civil Action No.<br>11-4211(DMC)(MF) |

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

Lindsey H. Taylor
Donald A. Ecklund
Zachary S. Bower
CARELLA, BYRNE, CECCHI
   OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Jay W. Eisenhofer
Michael J. Barry
Caitlin Moyna
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, Delaware 19801
(302) 622-7000

Mark Lebovitch
Brett M. Middleton
Jeremy Friedman
BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

*Attorneys for Plaintiff*

## **TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ...................................................................1

II. ARGUMENT .................................................................................................2

    A. Plaintiff's Requested Fee Is Reasonable ..............................................2

    B. Plaintiff's Expert Properly Calculated a Range for the Value of the Reduction in Termination Fee ........................................11

    C. Under the Lodestar Method, the Fee Requested Is Reasonable ............................................................................................12

III. CONCLUSION............................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Dewey v. Volkswagen of America*,
   728 F. Supp. 2d 546 (D.N.J. 2010) ...................................................... 3, 5, 12, 13

*Duva v. GLG Partners, Inc.*,
   C.A. No. 5512-VCS (Del. Ch. Jan. 24, 2011) ................................................... 6

*Gober v. Cooper*,
   C.A. No. 4276-CC (Del. Ch. Nov. 23, 2009) .................................................... 6

*In re Celera Corp. S'holder Litig.*,
   C.A. 6304-VCP (Del. Ch. Mar. 23, 2012) ........................................................ 10

*In re Compellent Technologies, Inc. Shareholder Litigation*,
   C.A. No. 6084, 2011 WL 6382523 (Del. Ch. Dec. 9, 2011)
   ("*Compellent*") ........................................................................................... passim

*In re International Coal Group, Inc. Shareholders Litigation*,
   C.A. No. 6464-VCP (Del. Ch. Jan. 30, 2012) ............................................... 9, 10

*In re LG/Zenith Rear Projection Television Class Action Litigation*,
   No. 06-5609, 2009 WL 455513 (D.N.J. Feb. 18, 2009) .................................... 3

*In re Mediacom Commc'ns Corp.*,
   C.A. No. 5548-5552-VCS (Del. Ch. June 6, 2011) ....................................... 4, 8

*In re National City Corp. Shareholders Litigation*,
   C.A. No. 4123-CC, 2009 WL 2425389 (Del. Ch. July 31, 2009) ..................... 4

*In re Pride International  Inc. Shareholder Litig.*,
   C.A. No. 6201-VCS (Del. Ch. Nov. 23, 2011) .................................................. 8

*In re William Wrigley Jr. Company Shareholders Litigation*,
   2009 WL 154380 (Del. Ch. Jan. 22, 2009) ..................................................... 5, 6

*Minard v. Warbug Pincus Private Equity IX, LP*,
   C.A. No. 4894-VCS (Del. Ch. May 26, 2010) .................................................. 4

*Smith v. ServiceMaster Co.*,
    C.A. No. 2924-VCS (Del. Ch. Sept. 29, 2008) ..................................................6, 7

*State of Wisconsin Investment Board v. Bartlett*,
    2002 WL 568417 (Del. Ch. April 9, 2009) ..................................................10, 11

Plaintiff Louisiana Municipal Police Employees' Retirement System ("LAMPERS" or "Plaintiff") respectfully submits this reply memorandum of points and authorities in further support of its motion for attorneys' fees and expenses ("Motion").

## I.  PRELIMINARY STATEMENT

Defendants' opposition to Plaintiff's Motion rests upon incorrect applications of law, baseless interpretations of the expert report of Dr. Guhan Subramanian, and disingenuous attacks on the efforts and achievements of plaintiffs' counsel.  As explained in Plaintiff's opening brief, a significant fee award is warranted in this case based on the substantial benefit achieved through the Settlement for the shareholders (the "Class") of Medco Health Care Solutions, Inc. ("Medco"), the centerpiece of which was an unprecedented $300 million in the termination fee in the merger agreement.

In opposing Plaintiff's motion, Defendants misapply relevant precedent in arguing that a fee cannot be based on a percentage of the benefit.  Their analysis of *In re Compellent Technologies, Inc. Shareholder Litigation*, C.A. No. 6084, 2011 WL 6382523 (Del. Ch. Dec. 9, 2011) ("*Compellent*"), and other relevant authority is simply wrong.  Moreover, their attack on Dr. Subramanian's report rests on a complete distortion of Dr. Subramanian's analysis, and Defendants' opposing report of Kevin Dages wholly misses the point.  Critically, however, even under

Mr. Dages's analysis, the benefits provided through the Settlement warrant an award of fees equal to or even above Plaintiff's request here, and certainly many multiples of the figure suggested by Defendants.

Finally, Defendants' attack on the hours expended by plaintiffs' counsel is inappropriate and misguided. The jurisdictional fight that Defendants say accounts for much of counsel's lodestar was entirely a product of Defendants' abusive litigation tactics. They should not be heard to contest the relevance of time expended by the attorneys in the companion Delaware litigation (the "Delaware Action") because it was Defendants who insisted that the Settlement here be expanded to include the plaintiffs in the Delaware Action and that those plaintiffs submit their fee application in tandem with Plaintiff's counsel in this Action.

Defendants' response to Plaintiff's fee application is not only legally unsound and factually incorrect, but also a disingenuous retort in light of Defendants' own litigation strategy and demands in settlement negotiations. Plaintiff respectfully submits that the requested fee should be awarded in full.

## II. ARGUMENT

### A. Plaintiff's Requested Fee Is Reasonable

#### 1. The Percentage of Recovery Theory Applies

Defendants argue – incorrectly – that Plaintiff's counsel should not be entitled to an attorneys' fee award based upon the percentage of recovery theory

because the benefit they secured for Medco's shareholders was non-monetary. Defendants' contention is incorrect. Relevant law clearly establishes that the percentage of recovery theory is appropriate even in instances where non-monetary benefits are achieved, so long as those benefits are quantifiable.

Defendants' efforts to distinguish the cases Plaintiff relies upon for this premise are unsuccessful. Defendants say that *Dewey v. Volkswagen of America*, 728 F. Supp. 2d 546, 590 (D.N.J. 2010) and *In re LG/Zenith Rear Projection Television Class Action Litigation*, No. 06-5609, 2009 WL 455513, at *8 (D.N.J. Feb. 18, 2009) are inapplicable because they involve products liability rather than breach of fiduciary duty claims. This is a distinction without a difference. The point central to those cases and to this one, as well as *Compellent*, is that the benefits achieved for the class were non-monetary, but could be quantified, and so the courts determined it appropriate to award attorneys' fees based on a percentage of that quantifiable benefit. And while *Dewey* may have been based on labor costs (which were, of course, estimates), *Dewey*, F. Supp. 2d at 593-94, the settlement in *LG/Zenith* involved warranty extensions, *LG/Zenith*, 2009 WL 455513, at *9, a benefit far less quantifiable than the reduction in termination fee at issue here. Indeed, *Compellent* provides the Court with a cogent framework for quantifying that reduction in termination fee.

The cases Defendants cite in order to undermine the importance of the reduction in the deal termination fee are not compelling. *In re Mediacom Communications Corp.*, C.A. No. 5548/5552-VCS, Trans. at 13-14 (Del. Ch. June 6, 2011) was a corporate transaction case where the benefit to the class was an additional $10 million in purchase price, and the court simply credited plaintiffs' counsel for achieving that result for the class. At no point did the Court state that a reduction in a termination fee, coupled with additional disclosures, is of no value to the class or does not warrant an award of attorneys' fees based upon a percentage of recovery theory. Similarly, *Minard v. Warbug Pincus Private Equity IX, LP*, C.A. No. 4894-VCS, Trans. at 20 (Del. Ch. May 26, 2010) does not belittle the value of a reduction in a deal termination fee. Rather it simply states that large attorneys' fees should be reserved where, as here, there is a large economic benefit to the class, and notes that the court "will continue" to approve "very, very big fee awards" where "there is a genuinely large economic benefit produced by litigants on behalf of the class." Finally, *In re National City Corp. Shareholders Litigation*, C.A. No. 4123-CC, 2009 WL 2425389, at *3 (Del. Ch. July 31, 2009) involved a settlement that achieved only six additional "minor" disclosures, and no changes to the actual terms of the deal. In contrast, Plaintiff achieved a $300 million reduction in the termination fee, as well as additional corrective measures. Therefore, Defendants' argument that the percentage of recovery theory does not

4

apply to cases where quantifiable, non-monetary are achieved is unsupported by the law.

      2.      **Defendants Misstate Delaware Authority Concerning the Value of the Therapeutic Benefits**

Defendants also try repeatedly to minimize the value of the benefit achieved for the class by the $300 million reduction in termination fee. In support of this proposition, Defendants cite a host of cases which involved various non-monetary settlements of deal litigation where the attorney fee awards were smaller than those requested here. However, in all those instances, they leave out key components of the cases which render them irrelevant or incomparable to this case.

For example, Defendants classify *In re William Wrigley Jr. Company Shareholders Litigation*, 2009 WL 154380 (Del. Ch. Jan. 22, 2009) as "highly analogous to the case at bar." Express Scripts' Opposition to Plaintiffs' Fee Application (hereinafter referred to "Opposition") at *10. However, the settlement in *Wrigley* involved only a 10% reduction in the termination fee, from $690 million to $621 million. *Wrigley*, 2009 WL 154380 at *5. This reduction did not create the same opening for topping bidders as did the $300 million reduction at

issue here.  Furthermore, the $690,000 fee award in *Wrigley* was agreed to by the parties.  *Id.* at *6.[1]

*Duva v. GLG Partners, Inc.*, C.A. No. 5512-VCS, Trans. at 11-12 (Del. Ch. Jan. 24, 2011) is also inapposite.  There, the court accorded little weight to the reduction in the termination fee because insiders with a 49% ownership stake had a voting agreement to sell their shares to the purchaser; thus there would be little incentive for a topping bidder to emerge no matter what the termination fee.  *Duva* at 10, 15-17, 39-40.  Furthermore, the magnitude of the reduction in the termination fee was small – a $18 million – compared to the $300 million reduction present here.  *Id.* at 18.  Finally, the court granted the full fee that was requested by plaintiffs in *Duva*.  *Id.* at 40.

Defendants fare no better by relying upon *Gober v. Cooper*, C.A. No. 4276-CC, Trans. (Del. Ch. Nov. 23, 2009), where there was only a $2 million reduction in the termination fee, from $20 million to $18 million.  Despite this extremely minor reduction in termination fee, however, the court found it did provide value to the class, and took it into consideration in awarding attorneys' fees of $700,000, which was the full amount of fees requested.  *Id.* at 18-21.  Finally, Defendants cite *Smith v. ServiceMaster Co.*, C.A. No. 2924-VCS (Del. Ch. Sept. 29, 2008), where

---

[1] Moreover, in light of the Court's more recent shift to the valuation framework of *In re Compellent*, it is fair for the Court to discount any pre-*Compellent* precedents

6

the court found that there was value to the reduction in the termination fee, *id.* at 46, but also held that the settlement was "ordinary." *Id.* at 49.[2] The court in *ServiceMaster* left room for the possibility of much higher awards where, as here, the benefit to the class was of a great magnitude

### 3. It Is Proper to Apply *Compellent* Here

Finally, Defendants argue against application of *Compellent* altogether simply because the calculated benefit here is larger than that calculated in *Compellent*. Opposition at 13-15. That argument is completely irrelevant and, in fact, demonstrates precisely why application of the methodology adopted by the Court in *Compellent* makes perfect sense.[3]

The policies underlying *Compellent* are easy to understand. The principle factor in determining an appropriate attorneys' fee award is the value of the benefit to the class at the time the benefit is achieved. As Chancellor Strine recently observed in approving a settlement that involved the substantial reduction in a

---

that do not conduct a logical valuation of the benefits achieved.

[2] Defendants also attempt to de-value the benefits of the additional disclosures and the postponement of the shareholder vote. Opposition at 11-12. However, in the interest of brevity and efficiency, and because these corrective measures do not form the central basis of Plaintiff's claim for a fee, Plaintiff will not address each case cited by Defendants, but will refer the Court to those cases.

[3] Chancellor Strine of the Delaware Chancery Court has opined on the foolishness of creating a "sliding scale" for attorneys' fees, where an attorney receives a

7

termination fee where a topping bid did not emerge: "[W]e have to look also at the benefit that was conferred at the time it was conferred and not solely from with the benefit of hindsight. At the time the settlement was entered into, I'm convinced that there was the benefits to the class and that they justify the fee." *In re Pride Int'l Inc. S'holder Litig.*, C.A. No. 6201-VCS, Trans. at 20-21 (Del. Ch. Nov. 23, 2011); *see also Compellent,* 2011 WL 6382523, at *1 ("The value of that benefit must be assessed as of the time settlement was reached by the two groups of fiduciaries who negotiated its terms: the attorneys who acted as fiduciaries for the class, and the Compellent directors who were sued for allegedly breaching their duties. Delaware law does not judge fiduciary decisions by hindsight or evaluate the merits of the decisions by what later transpired.") Indeed, a primary purpose of awarding attorneys' fees in class actions is to incentivize plaintiffs' counsel to achieve extraordinary benefits for the class. Courts should endeavor to place a numerical value on any non-monetary benefits procured for the class. *See In re Mediacom Commc'ns Corp.*, C.A. No. 5548/5552-VCS, Trans. at 15 (Del. Ch. June 6, 2011), Thus, courts should endeavor to quantify the benefit to the class wherever possible. As *Compellent* explains, "[r]elaxing deal protections facilitates a topping bid," and "[t]he principal benefit conferred by the [lowering of the

---

smaller percentage of a larger benefit to the class. *See In re Mediacom Commc'ns Corp.*, C.A. No. 5548/5552-VCS, Trans. at 15 (Del. Ch. June 6, 2011).

8

termination fee] was therefore to increase the likelihood of a topping bid." *Compellent*, 2011 WL 6382523 at *1. Noting that this benefit is "easy to conceive but difficult to quantify," the *Compellent* court sets out to do just that, and then provides a framework (not a formula) for determining the value of the relaxing of any deal protective device: "the incremental amount that stockholders would receive if a higher bid emerged times the probability of the higher bid." *Id.* at *19-20.

*Compellent*, though a relatively new case, has already been accepted by other courts in Delaware which have embraced its framework. *In re International Coal Group, Inc. Shareholders Litigation*, C.A. No. 6464-VCP, Trans. at 69 (Del. Ch. Jan. 30, 2012) used *Compellent's* framework in deriving a reasonable attorneys' fee to be awarded for a modest ($10 million) reduction in a termination fee. Although *International Coal* declined to apply the 8% probability of a topping bidder that was used in *Compellent*, such a departure from the numerical inputs of *Compellent* is reasonable and understandable given that the termination fee was only reduced less than 10% -- from $115 million to $105 million.[4] And although

---

[4] Defendants' attempts to use *International Coal* as an example where *Compellent* did not apply is unavailing. As noted, *International Coal* did follow the *Compellent* framework, but merely modified the numerical inputs to fit the facts before it. *Compellent* clearly did not intend for its numerical inputs to remain constant against the infinite factual possible deal litigation scenarios to which it might apply.

the *International Coal* court recognized that the chances that a topping bidder would emerge would be fairly small in light of such a modest reduction in termination fee, it did ascribe a value to that chance and awarded fees accordingly. *International Coal* at 71.  In addition, Vice Chancellor Parsons in *In re Celera Corporation Shareholder Litigation*, C.A. 6304-VCP (Del. Ch. Mar. 23, 2012) applied the *Compellent* framework to determine the value of a reduction in a termination fee, Slip. Op. at 78-79, and awarded fees accordingly.

In short, Defendants provide no cogent argument based in law, fact or reason why *Compellent* should not be followed here.  Defendants rely upon *State of Wisconsin Investment Board v. Bartlett*, 2002 WL 568417 (Del. Ch. Apr. 9, 2009) for the proposition that "theoretical" increases in value of a merger are not benefits that should be rewarded.  Opposition at 14.  However, *Bartlett*'s facts are far removed from those present here.  In *Bartlett*, there was a delay in the shareholder vote caused by the litigation, and Plaintiffs' counsel argued such delay resulted in an increase in the exchange ratio of the two companies to be merged, and as such, higher value to the target company's shareholders.  The court found that this argument misconstrued the terms of the deal because the variances in the exchange ratio were actually built into the deal structure, and were intended to keep the overall value of the deal within a particular range.  The ultimate amount fell within that range, and thus the court held that the litigation did not achieve a benefit for

the class. *Barlett.* at *4. Because these facts are so removed from those present here, *Bartlett* is not at odds with *Compellent*, and it has no relevance to this case which seeks to measure the value of a reduction in a termination fee and has nothing to do with measuring differences in exchange rates.[5]

### B. Plaintiff's Expert Properly Calculated a Range for the Value of the Reduction in Termination Fee

Defendants' attack on the Subramanian Report with the Dages Report is meritless. As explained in more detail in Subramanian's Supplemental Report ("Supp. Report"), this battle of the experts boils down to a question of whether there was a zero percent chance that a topping bidder would emerge as posited by Dages or, as concluded by Subramanian, a 5-10% chance that a topping bidder would emerge. Even if the Court were to apply a 2% probability of a topping bidder (one we submit is artificially low), it would arrive at an attorneys' fee award far greater than the one that Defendants advocate, in the range of $6.1-$8.3 million.[6] Supp. Report. at 4.

---

[5] Defendants also invited this court to certify to the Delaware Supreme Court the question of whether *Compellent* is good law in light of *Bartlett*. Opposition at 15 n.8. Because *Bartlett* and *Compellent* are not at all similar, and therefore are not incongruent, Defendants' request for certification should be denied.

[6] Neither Defendants nor Dages questions the assumption of Subramanian that the premium a topping bidder would apply to the purchase price for Medco is in the 10-14% range.

11

Furthermore, Mr. Dages's empirical research is based on the absurd premise that only topping bidders who emerged as a result of litigation should be examined. This misses the point entirely. A topping bidder would not emerge based on whether litigation occurred, but would emerge based on whether the deal protection devices were modified, in this case the lowering of the termination fee. It would be irrelevant to the topping bidder *how* such modification occurred. Thus, looking only at transactions where topping bidders emerged after litigation was initiated is pointless. However, even assuming this were the correct approach, Mr. Dages found that 1 in 24 transactions led to a topping bidder after litigation, which is a 4.2% rate. Therefore, Mr. Dages's conclusion that there was a zero probability of a topping bidder emerging for Medco after the reduction is belied by his own empirical research. Finally, Mr. Dages's zero percent probability ignores the fact that Defendants themselves disclosed two potential other suitors: United Healthcare and CVS Caremark.

### C.  Under the Lodestar Method, the Fee Requested Is Reasonable

As previously discussed, the key driver for this request is the benefits conferred upon the Class and the percentage-of-recovery doctrine – not the number of hours worked or the rates charged. Indeed, a lodestar analysis is merely used under such circumstances to determine whether requested fees under the percentage-of-recovery method are reasonable. *See Dewey*, 728 F. Supp. 2d at

606. Moreover, Defendants should be estopped from challenging the number of hours worked and the number of attorneys employed due to the fact that Defendants: (1) employed wasteful litigation tactics rooted in their own forum shopping; and (2) insisted upon a global settlement and a single application for attorneys' fees and expenses covering all actions in both the Delaware and the New Jersey federal forums.

Despite Defendants' extraordinary efforts to stay this action in favor of the Delaware action, Class Counsel prosecuted this action in an efficient manner. From the outset of this litigation, Plaintiff's fundamental goal was to eliminate, or at least mitigate, the Board-approved hurdles to allowing the market to dictate the highest value reasonably available for Medco shareholders.  Accordingly, a leadership structure was quickly agreed to without briefing, and Class Counsel diligently and effectively managed the prosecution of this action on an expedited basis, which included ensuring that the various plaintiffs' firms before this Court contributed meaningful work  without duplication of efforts.

Defendants' criticism of attorney hours spent prosecuting this action is a fabricated problem of their own making.  Indeed, in the normal course of multi-forum merger class action litigation – which does not benefit from legislation such as the Private Securities Litigation Reform Act – it is common for several plaintiffs represented by different law firms to file complaints in multiple forums.  This is

particularly true when, as here, a corporate board's actions appear particularly troublesome to a company's public stockholders. Typically, defendants in such cases are indifferent as to in which forum the action proceeds and which firms prosecute the action, so long as the various plaintiffs groups work together. Here, Defendants intentionally pursued all manners of legal gymnastics in an attempt to steer this action into the arms of the Delaware Chancery Court and Defendants preferred opposition counsel, causing otherwise needless motion practice and teleconferences in the process. Defendants' tactics included, *inter alia*, the following:

- Refused to accept service of process on behalf of their clients in this action while accepting service in the Delaware Action.

- Opposed Plaintiff's motion for expedited discovery in this action, arguing that the Proposed Transaction was not closing any earlier than the second quarter of 2012 and there was no need for the District Court to hear Plaintiff's claims until and unless there was more clarity on when, how and whether the Proposed Transaction would close.

- Rushed to file a motion to dismiss Plaintiff's complaint and sought to have this action stayed in favor of the Delaware Action.

- Opposed Plaintiff's motion for class certification even though they had stipulated to it in the Delaware Action.

- Took the unusual step of moving for an interlocutory appeal after this Court rejected Defendants' motion to dismiss and stay.

Defendants should be estopped from contesting the number of billable hours and attorneys listed in Plaintiff's fee application because it was Defendants who

14

insisted upon including all of the plaintiffs from the Delaware state and New Jersey federal forums in the Settlement.[7]  Defendants, eager for global resolution of this matter, implored Plaintiff's counsel to corral the entirety of related actions – no small task that would generally fall on Defendants – but is now balking at the totality of their desired compilation.

Similarly, it was Defendants who insisted that a single application for attorneys' fees and expenses be presented to the Court.  Defendants should not expect to be able to demand global peace without paying for it.  As set forth in Plaintiff's Memorandum of Law in Support of its Motion for an Award of Attorneys' Fees and Expenses, the average hourly rate was reasonable and the fee requested here is comparable to those awarded in other cases in this Circuit.  *See* Opening Brief at 40.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Class Counsel respectfully request that the Court grant the relief requested herein.

---

[7] It was also Defendants' indulgence of and preference for the Delaware Action that caused plaintiffs' counsel in the Delaware Action to accrue hours that ultimately did not drive the disposition of this action.

15

        Respectfully submitted,

        CARELLA, BYRNE, CECCHI,
        OLSTEIN, BRODY & AGNELLO, P.C.

        Attorneys for Plaintiff

        By:  /s/ *Lindsey H. Taylor*
            LINDSEY H. TAYLOR

Dated: April 9, 2012

Of Counsel:

Mark Lebovitch
Brett M. Middleton
Jeremy Friedman
BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

Jay W. Eisenhofer
Michael J. Barry
Caitlin Moyna
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, Delaware 19801
(302) 622-7000