NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE MEDCO/ EXPRESS SCRIPTS: MERGER LITIGATION | Hon. Dennis M. Cavanaugh<br><br>**OPINION**<br><br>Civil Action 2:11-cv-4211 (DMC)(MF) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the Motion of Plaintiff Louisiana Municipal Police Employees' Retirement System ("LMPERS" or "Plaintiff"), on behalf of itself and all other similarly situated shareholders of Medco Health Solutions, Inc. ("Medco"), for Final Approval of Class Action Settlement, and upon Plaintiff's Motion for Attorneys' Fees.[1] ECF Nos. 94, 99, 106. After considering the submissions of the parties, and based upon the fairness hearing conducted before this Court on April 16, 2012, it is the decision of this Court, for the reasons herein expressed, that Plaintiff's Motion for Final Approval of the Settlement is **granted**, and that Plaintiff's Motion for an Award of Attorneys' Fees is **granted**.

**I.      BACKGROUND**

This action concerns deal protection terms in the proposed acquisition of Medco by Express Scripts, Inc. (the "Proposed Transaction"). On November 25, 2011, Plaintiff filed a Settlement Agreement with this Court, which provides for a three hundred million dollar reduction in the

---

[1] The Motion of the "New Jersey Counsel" to Intervene and for Attorneys' Fees and Expenses has been withdrawn. ECF No. 101.

proposed acquisition's termination fee, amendments to the matching rights, the inclusion of additional disclosures in the final proxy statement, and postponement of the shareholder vote to approve the merger (the "Settlement Agreement"). ECF No. 94-15. On November 28, 2011, this Court entered an Order preliminarily approving the Settlement Agreement and scheduling a Fairness Hearing. ECF No. 96. On April 2, 2012, pursuant to this Court's Order, Michael Rosenbaum of Berdon Claims Administration LLC ("Berdon") filed an affidavit regarding mailing of notice of the pendency of the instant class action, the proposed settlement thereof, the scheduled fairness hearing, and the right of class members to object. ECF No. 104. Plaintiff filed its brief in Support of Final Approval of the Settlement on April 2, 2012. ECF No. 106. The matter is now before this Court.

## II.     LEGAL STANDARD

A. **Settlement Approval**

Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs." FED. R. CIV. P. 23(e). In determining whether to approve a class action settlement pursuant to Rule 23(e), "the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir.1995) (quoting Grunin v. Int'l House of Pancakes, 513 F.2d 114, 123 (8th Cir. 1975), cert. denied, 423 U.S. 864 (1975) (citation omitted)).

Before giving final approval to a proposed class action settlement, the Court must determine that the settlement is "fair, adequate, and reasonable." Lazy Oil Co. v. Witco Corp., 166 F.3d 581,

588 (3d Cir. 1999); Walsh v. Great Atl. & Pac. Tea Co., 726 F.2d 956, 965 (3d Cir. 1983). In Girsh v. Jepson, the Third Circuit identified nine factors that a district court should consider when making this determination: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 521 F.2d 153, 157 (3d Cir.1975). "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." In re American Family Enterprises, 256 B.R. 377, 418 (D.N.J. 2000). Rather, the court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under Girsh. See In re Orthopedic Bone Screw Prods. Liab. Litig., 176 F.R.D. 158, 184 (E.D. Pa.1997); see also In re AT&T Corp. Secs. Litig., 455 F.3d 160 (3d Cir. 2006). In sum, the Court's assessment of whether the settlement is fair, adequate and reasonable is guided by the Girsh factors, but the Court is in no way limited to considering only those enumerated factors and is free to consider other relevant circumstances and facts involved in this settlement.

**B.     Attorneys' Fees**

"While the common benefit doctrine is distinct from the common fund doctrine, the former derives from the latter." In re Diet Drugs, 582 F.3d 524, 546 n.44 (3d Cir. 2009); see Polonski v. Trump Taj Mahal Assocs., 137 F.3d 139, 145 (3d Cir. 1999) ("The origins of [the common benefit]

doctrine can be traced to the common fund rule whereby those who share in a fund must participate in paying attorney's fees when a prevailing plaintiff's litigation redounds to the benefit of the common fund."). With respect to the common benefit doctrine, "[t]he creation or preservation of a fund is not the justification for the fee award . . . it is the vindication of the class' . . . rights that is the common benefit conferred on the class that justifies an award of attorneys' fees." Pawlak v. Greenawalt, 713 F.2d 972, 983 (3d Cir. 1983). "[A] common benefit action is distinguishable from a common fund action because any fees not awarded to counsel will not be paid to the plaintiffs to augment their settlement fund, as is the case in the normal common fund situation." Id.

"Under the common benefit doctrine, an award of attorney's fees is appropriate where 'the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.'" In re Diet Drugs, 582 F.3d 524, 546 (3d Cir. 2009) (quoting Polonski, 137 F.3d at 145. This test requires the satisfaction of three distinct elements: "(1) the plaintiff must confer a substantial benefit; (2) to members of an ascertainable class; and (3) the court must ensure that the costs are proportionally spread among that class." Id. In Marshall v. United Steel Workers, 666 F.2d 845, 848 (3d Cir. 1981), the Third Circuit further refined this test, and inquired: "(1) whether the benefits may be traced with some accuracy; (2) whether the class of beneficiaries are readily identifiable; and, (3) whether there is a reasonable basis for confidence that the costs may be shifted with some precision to those benefitting." Id.

### III.  DISCUSSION

#### A.  Class Certification

    i.  The Proposed Class

The first issue in this matter is Plaintiff's Motion for Final Certification of the Settlement Class. The parties agree that the Class is to be defined as "all record holders and beneficial owners of common stock of Medco together with their successors, heirs and assigns, during the period commencing July 21, 2011, and ending at the effective time of the closing of the Proposed Transaction, or the withdrawal or termination of the Proposed Transaction, as the case may be, excluding Defendants."

    ii.  Rule 23(a)

Class certification under Rule 23 has two primary requirements. First, pursuant to FED. R. CIV. P. 23(a), the party seeking class certification must demonstrate the existence of numerosity of the class, commonality of the questions of law or fact, typicality of the named parties' claims or defenses, and adequacy of representation. Second, the party must demonstrate that the class fits within one of the three categories of class actions set forth in FED. R. CIV. P. 23(b). For this second requirement, Plaintiff is seeking certification under Rule 23(b)(1) and (2). Rule 23(b)(1) allows certification of a class if prosecuting separate actions would result in prejudice either to Plaintiff or Defendants. In re Ikon Office Solutions, Inc. Sec. Litig., 191 F.R.D. 457, 466 (E.D.Pa. 200). Rule 23(b)(2) allows certification of a class where the party opposing the class has acted or refused to act in a manner generally applicable to the class, so that final injunctive or declaratory relief would be appropriate with respect to the class as a whole.

Plaintiff notes that "[t]he numerosity requirement is satisfied here because the number of members for the Settlement Class is likely to be in the thousands, owning over 387 million shares of Medco stock." Where plaintiffs demonstrate that the potential number of plaintiffs exceeds 40,

the numerosity requirement is generally satisfied. Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001). Accordingly, Plaintiff has satisfied this requirement. Regarding the commonality requirement, the Court notes that the common questions in this case include whether the Medco Board breached its fiduciary duties to the class in connection with the Proposed Transaction, whether the single-trigger Termination Fee and other deal protection provisions are invalid and unenforceable, whether Express Scripts aided and abetted the breaches of fiduciary duties alleged, and whether the consideration offered in the Proposed Transaction is fair. The Court is satisfied that these common questions fulfill the commonality requirement. Further, the typicality requirement is met because the named Plaintiff's claims and the claims of the proposed class are all based on the same legal theories. Finally, Plaintiff states that the adequacy requirement is met because "Plaintiff's claims do not conflict with those of other Settlement Class members, and Plaintiff's counsel are qualified, experienced, and generally able to conduct the litigation." Plaintiff shares an identity of interest with any potential absentees, and the Court has previously recognized the adequacy of the firms in this matter. See, e.g., In re Schering-Plough/Merck Merger Litig., No. 09-1099, 2010 U.S. Dist. LEXIS 29121, at *24 (March 26, 2010). Accordingly, the adequacy requirement is met.

      iii.    Rule 23(b)

As noted above, in addition to Rule 23(a), Plaintiff must also satisfy Rule 23(b). Plaintiff states that it satisfies Rule 23(b)(1)(A) "because there is a significant risk that if individual cases were brought on behalf of various shareholders, Medco would have to make different amendments to the Deal Protections, would have to make different additional disclosures, or would make no amendments or additional disclosures at all." Such an instance would result in prejudice, and accordingly, the Class may be properly certified pursuant to Rule 23(b)(1)(A). Plaintiff also states

that the class is certifiable pursuant to Rule 23(b)(2) because the settlement relief sought is exclusively injunctive or declaratory. Plaintiff is correct, and accordingly, the Class may be certified pursuant to Rule 23(b)(2) as well. In re Schering-Plough/Merck Merger Litig., 2010 U.S. Dist. LEXIS 29121, at *27.

Accordingly, the Court certifies a class consisting of "all record holders and beneficial owners of common stock of Medco together with their successors, heirs and assigns, during the period commencing July 21, 2011, and ending at the effective time of the closing of the Proposed Transaction, or the withdrawal or termination of the Proposed Transaction, as the case may be, excluding Defendants."

### B.   Approval of the Proposed Settlement

The next issue for the Court's consideration is the approval of the Settlement Agreement, which requires an analysis of the Girsch factors.

The first factor is concerned with assessing the "probable costs, in both time and money, of continued litigation." In re Cendant Corp. Litig., 264 F.3d 201, 234 (3d Cir. 2001). While this Court has already determined motions to dismiss in this matter, motions for summary judgment would likely be filed, and if denied, the Parties would also engage in additional pre-trial motion practice, as well as trial itself. Accordingly, this factor weighs in favor of approval.

The second factor requires the Court to evaluate whether the number of objectors, in proportion to the total class, indicates that the reaction of the class to the Settlement Agreement is favorable. The second Girsh factor is especially critical because the reaction of the class "is perhaps the most significant factor to be weighed in considering [the settlement's] adequacy." Sala v.

National R.R. Passenger Corp., 721 F. Supp. 80, 83 (E.D. Pa. 1989). Further, silence constitutes tacit consent to the agreement. No such objections have been filed. This militates strongly in favor of a finding that the Settlement Agreement is fair and reasonable, and is entitled to nearly dispositive weight. In re Linerboard Antitrust Litig., 321 F. Supp. 2d 619 (E.D. Pa. 2004). Accordingly, the Court places significant weight on this factor, and finds that it weighs heavily in favor of approval.

The third Girsch factor requires consideration of the "degree of case development that Class Counsel have accomplished prior to Settlement," including the type and amount of discovery already undertaken. GMC, 55 F.3d at 813. In short, under this factor the Court considers whether the amount of amount of discovery completed in the case has permitted "counsel [to have] an adequate appreciation of the merits of the case before negotiating." In re Schering-Plough/Merck Merger Litig., 2010 U.S. Dist. LEXIS 29121, at *30. The parties have exchanged motions for a preliminary injunction, motions to dismiss, motions to stay, and appeals to the Third Circuit. Additionally, the parties have exchanged discovery. The Court finds that Plaintiff's counsel have an adequate appreciation of the facts in this matter, and this factor weighs in favor of approval.

The fourth and fifth factors require consideration of the risks of establishing liability and damages. The inquiry requires a balancing of the likelihood of success if the case were taken to trial against the benefits of immediate settlement. In re Safety Components Int'l, 166 F. Supp. 2d 72, 89 (D.N.J. 2001). If this case were to proceed to trial, Plaintiff's claims would likely remain subject to the "business judgment rule." Plaintiff also faced time restraints given the impending shareholder vote on the Proposed Transaction. Further, if the case were to proceed, Plaintiff would likely have to overcome a motion for summary judgment, as well as the risky prospect of a trial. The Settlement Agreement, meanwhile, provides the relief of loosening the deal protection devices attached to the

Proposed Transaction. Plaintiff faces significant risks in establishing liability and damages, and this factor therefore weighs in favor of approval.

The sixth factor requires the Court to consider the risks of maintaining the class action through trial. Plaintiff argues that Defendants will continue to oppose class certification, and that the Settlement Agreement avoids any uncertainty with respect to these issues. As the Third Circuit has explained, and this Court has noted, this factor is of negligible importance, as there will always be a risk or possibility of decertification. In re Schering-Plough/Merck Merger Litig., 2010 U.S. Dist. LEXIS 29121, at *37. Accordingly, while the Court does find that the risks of maintaining the class action through trial weigh in favor of approval, the Court does not place significant weight on this factor.

The seventh factor requires the Court to evaluate whether Defendants could withstand a judgment much greater than the amount of the settlement. In re Schering-Plough/Merck Merger Litig., 2010 U.S. Dist. LEXIS 29121, at *37. Because the settlement agreement provides relief of a non-pecuniary nature, the Court is not in a position to say whether Defendants could withstand a greater judgment. As a result, this factor should not weigh against or in favor of approval. Unite, 2005 WL 2877899, at *4.

The eight and ninth factors require the Court to consider the range of reasonableness of the Settlement Agreement in light of the best possible recovery and in light of all the attendant risks of litigation. In this case, the Settlement represents a better option than the prospect of little or no recovery at all. Thus, the Court finds that this factor weighs in favor of approval.

The Court notes that each of the nine Girsh factors is either neutral or weighs in favor of approval. The Court further emphasizes the unanimous shareholder approval for the Settlement

Agreement, and the attendant lack of objections on the record or at the Fairness Hearing. Additionally, the Court notes that the Settlement Agreement was reached as the result of extensive, arms length negotiation between experienced counsel. Accordingly, upon weighing the Girsch factors, the Court approves the Settlement.

C.  **Attorneys' Fees**

   i.  The Common Benefit Doctrine

Finally, Plaintiff seeks an award of attorneys' fees. Plaintiff originally sought an award of fees of $18 million, plus out of pocket expenses in the amount of $99,847.67. The parties informed this Court during the Fairness Hearing, however, that they had agreed to an award of attorneys' fees in the amount of $7 million, to be distributed by Lead Plaintiff in its discretion. Pursuant to Rule 23(h), "the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Thus, this Court maintains discretion in determining whether to award fees. Accordingly, the Court will review Plaintiff's application.

Plaintiff seeks fees pursuant to the "common benefit doctrine," which recognizes class counsel's efforts in litigating a case that results in a substantial benefit to members of a class, and permits fees even though the benefit conferred is purely non-pecuniary. In re Diet Drugs Prods. Liab., 582 F.3d at 546. "[I]n order to obtain common benefit fees, an attorney must confer a substantial benefit to members of an ascertainable class, and the court must ensure that the costs are proportionately spread among that class." Id. at 546. Plaintiff argues that each of the modifications made to the proposed transaction conferred a benefit on the class. Plaintiff states that the reduction in the Termination Fee from $950 million to $650 million conferred a benefit by "bringing the

termination fee below a level that otherwise would have dissuaded even the most aggressive third party bidders from pursuing a deal for Medco." Plaintiff notes that the modification to the matching rights by limiting Express Scripts to only one opportunity "relieved concern by potential topping bidders that a bidding war would ensue and further increased the likelihood that a determined third party bidder would have a path to success." Plaintiff also notes that the settlement "resulted in numerous additional or amended disclosures in the Proxy Statement which allowed Medco's shareholders to make a decision on whether to vote to approve the Transaction based upon a full and complete understanding of the relevant facts."

The Court agrees that a benefit has been conferred by the Settlement Agreement. Further, the Court notes that there is a readily ascertainable class, which consists of Medco's shareholders. In re Schering-Plough/Merck Merger Litig., 2010 U.S. Dist. LEXIS 29121, at *50. Additionally, a comparison of the terms of the Proposed Transaction prior to and after the Settlement Agreement confirms that the benefits can be traced to Plaintiff's and Class Counsel's involvement in this action. Finally, as the cost will be incurred in the first instance by Medco, an individual fictitious entity, the fee will be spread proportionally. Id. Accordingly, an award of fees is appropriate under the common benefit doctrine.

    ii.    The Reasonableness of the Fee

Finally, the Court turns to a consideration of the reasonableness of Plaintiff's requested fee. As noted above, while Plaintiff originally requested a fee in the amount of $18 million, negotiations between counsel arrived at a mutually acceptable figure of $7 million. This figure is a final amount, to be distributed at Lead Plaintiff's discretion between the twenty six law firms and numerous attorneys that pursued this matter.

In the original application for attorneys' fees, Plaintiff submitted evidence indicating that its combined lodestar totaled $3,149,852.25, based on a total of 5,726.75 hours expended. Given the skill of counsel in this action, the benefit achieved for the class, the contingent nature of this case, and the quality of Lead Counsel's work in this matter, the Court finds that a lodestar multiplier of approximately 2.22 would be appropriate in this matter. Further, the Court notes that the negotiation between counsel brought about a significant decrease in the requested fee amount. Accordingly, the Court finds that Plaintiff's fee request, achieved by arms length negotiations between able and experience counsel, is reasonable.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Final Approval of the Settlement is **granted**, and Plaintiff's Motion for an Award of Attorneys' Fees is **granted**. An appropriate Order accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date:      April 18, 2012
Orig.:     Clerk
cc:        All Counsel of Record
           Hon. Mark Falk, U.S.M.J.
           File